977 P.2d 554 (1999)
137 Wash.2d 957
Brett DAVIS, Petitioner,
v.
STATE of Washington, through its agency the DEPARTMENT OF LICENSING, Respondent.
No. 65688-6.
Supreme Court of Washington, En Banc.
Argued February 9, 1999.
Decided May 27, 1999.
Harry Ries, Moses Lake, for Petitioner.
Christine Gregoire, Attorney General, Mary Ann McIntosh, Asst., Wenatchee, for Respondent.
TALMADGE, J.
We are asked in this case to review two statutes that mandate the suspension of a young person's driver's license by the Department of Licensing (Department) upon notification by a court that such young person *555 has been convicted of certain drug offenses. We are also asked to evaluate the statutes to determine if they offend constitutional principles of equal protection of law. We hold RCW 69.50.420(1) requires a court to notify the Department as to violations of chapter 69.50 RCW by "juveniles" "thirteen years of age or older and under the age of 21." We further hold the word "juvenile" in RCW 46.20.265(1) takes the definition of the referring statute, in this case, RCW 69.50.420(1). Finally, we hold the statutes in question do not offend equal protection. We affirm the decision of the Court of Appeals dissolving the trial court's injunction preventing revocation of Davis's driver's license.

ISSUES
1. Do RCW 69.50.420(1) and RCW 46.20.265(1) apply to someone between the ages of 18 and 21 years?
2. If the statutes apply to persons between the ages of 18 and 21, do they violate the right to equal protection of law?

FACTS
Brett Davis, who was 19 years old at the time, pleaded guilty to a charge of possession of marijuana in Grant County District Court and was sentenced. The court sent notice of Davis's conviction to the Department pursuant to RCW 69.50.420(1). Upon receipt of the notice, the Department suspended Davis's driver's license pursuant to RCW 46.20.265(1).
After Davis learned about the suspension of his driver's license, he filed a complaint in Grant County Superior Court for injunctive and declaratory relief, and a motion for a temporary restraining order, all requiring the Department to reinstate his license. He asserted the suspension was improper, alleging ambiguity in the statutes as to the meaning of "juvenile." He noted the Juvenile Justice Act of 1977 definition of "juvenile" is: "`Juvenile,' `youth,' and `child' mean any individual who is under the chronological age of eighteen years and who has not been previously transferred to adult court[.]" RCW 13.40.020(14). Because he was 19 when the suspension occurred, he contended the statutes were inapplicable to him. He also contended the statute violated equal protection in applying to persons between 18 and 21 years of age.
The Department responded by acknowledging ambiguity in the two statutes as to the meaning of "juvenile," Clerk's Papers at 16, but argued the court could give effect to the language in RCW 69.50.420(1) describing juveniles as those persons 13 or over but under 21 by assuming the Legislature meant the word "juvenile" to mean "minor" rather than juvenile as defined in the Juvenile Justice Act. Clerk's Papers at 18.
The trial court agreed with Davis in a memorandum opinion, and issued an order staying the revocation of Davis's license. The trial court subsequently granted Davis's motion for summary judgment and permanently enjoined the Department from suspending Davis's license. Division Three of the Court of Appeals reversed, holding the Juvenile Justice Act's definition of juvenile was inapplicable here, and rejecting Davis's equal protection argument. Davis v. Department of Licensing, 90 Wash.App. 370, 952 P.2d 197 (1998). Davis petitioned for discretionary review, which we granted.

ANALYSIS
A. STATUTORY INTERPRETATION
The statutory scheme we are asked to consider is embodied in RCW 46.20.265(1) and various statutes set forth therein. RCW 46.20.265(1) provides:
In addition to any other authority to revoke driving privileges under this chapter, the department shall revoke all driving privileges of a juvenile when the department receives notice from a court pursuant to RCW 9.41.040(5), 13.40.265, 66.44.365, 69.41.065, 69.50.420, 69.52.070, or a substantially similar municipal ordinance adopted by a local legislative authority, or from a diversion unit pursuant to RCW 13.40.265. The revocation shall be imposed without hearing.
Under the provisions of RCW 46.20.265(1), the Department receives a notice from the court when enumerated persons are convicted of firearms offenses (RCW 9.41.040(5) *556 or RCW 13.40.265), alcohol crimes (RCW 66.44.365), or drug offenses (RCW 69.41.065, 69.50.420, 69.52.070). Upon such notice, the Department must "revoke all driving privileges" of the person. We are concerned here with RCW 69.50.420(1), which states:
If a juvenile thirteen years of age or older and under the age of twenty-one is found by a court to have committed any offense that is a violation of this chapter, the court shall notify the department of licensing within twenty-four hours after entry of the judgment.
We recently reviewed and summarized our principles of statutory interpretation:
In interpreting a statute, we do not construe a statute that is unambiguous. Food Servs. of Am. v. Royal Heights, Inc., 123 Wash.2d 779, 784-85, 871 P.2d 590 (1994). If the statute is ambiguous, the courts must construe the statute so as to effectuate the legislative intent. In so doing, we avoid a literal reading if it would result in unlikely, absurd or strained consequences. State v. Eight, 118 Wash.2d 551, 555, 825 P.2d 314 (1992). The purpose of an enactment should prevail over express but inept wording. Id.; State ex rel. Royal v. Board of Yakima County Comm'rs, 123 Wash.2d 451, 462, 869 P.2d 56 (1994). The court must give effect to legislative intent determined "within the context of the entire statute." Elgin, 118 Wash.2d at 556, 825 P.2d 314; State ex rel. Royal, 123 Wash.2d at 459, 869 P.2d 56. Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous. Stone v. Chelan County Sheriff's Dep't, 110 Wash.2d 806, 810, 756 P.2d 736 (1988); Tommy P. v. Board of County Comm'rs, 97 Wash.2d 385, 391, 645 P.2d 697 (1982). The meaning of a particular word in a statute "is not gleaned from that word alone, because our purpose is to ascertain legislative intent of the statute as a whole." State v. Krall, 125 Wash.2d 146, 148, 881 P.2d 1040 (1994).
Whatcom County v. City of Bellingham, 128 Wash.2d 537, 546, 909 P.2d 1303 (1996).
The initial principle of statutory interpretation is we do not construe unambiguous statutes: "In judicial interpretation of statutes, the first rule is `the court should assume that the legislature means exactly what it says. Plain words do not require construction'." State v. McCraw, 127 Wash.2d 281, 288, 898 P.2d 838 (1995) (quoting City of Snohomish v. Joslin, 9 Wash.App. 495, 498, 513 P.2d 293 (1973)), superseded by statute as cited in State v. Bolar, 129 Wash.2d 361, 917 P.2d 125 (1996).[1] Neither statute at issue in this caseRCW 69.50.420(1) or RCW 46.20.265(1)is ambiguous.
On its face, RCW 69.50.420(1) is not ambiguous. It defines precisely the range of ages that fall within its purview13 or over and under 21. Ambiguity arises only if one imports the definition of "juvenile" from the Juvenile Justice Act into the statute and claims that definition applies no matter where the word "juvenile" appears in the entire Revised Code of Washington. But the Juvenile Justice Act itself does not indicate any such sweeping legislative declaration. In fact, the definitional section of the Act, RCW 13.40.020, begins with the words, "For the purposes of this chapter." The Legislature thus specifically confined the definition of "juvenile" to chapter 13.40 RCW.[2] In the statute under consideration, RCW 69.50.420(1), the Legislature chose another definition of juvenile: those persons 13 or over and under 21 years of age. There is nothing ambiguous or anomalous about the Legislature's choice or the plain language it employed to implement its choice.
*557 The second statute under consideration is also unambiguous. RCW 46.20.265(1) mandates revocation of the driver's license and uses the word "juvenile," but does not specify any age range. Like chapter 69.50 RCW, chapter 46.20 RCW, covering drivers' licenses, does not define the word "juvenile." The meaning of "juvenile" in this section may easily be determined, however, by reference to the individual statutes RCW 46.20.265(1) cites. All of these statutes are notice provisions requiring courts that have found a person guilty of specific offenses to notify the Department within 24 hours after entry of the judgment. They "trigger" the license revocation mandate of RCW 46.20.265(1).
For instance, RCW 46.20.265(1) cites RCW 13.40.265 (firearm, alcohol, or drug violations).[3] Because this section comes from the Juvenile Justice Act, the definition of "juvenile" in that Act applies. RCW 46.20.265(1) also cites RCW 9.41.040(5), unlawful possession of firearms.[4] That section applies only to those under 18, so the word "juvenile" in RCW 46.20.265(1), by reference, must mean those under 18.
The next cited statute, RCW 66.44.365, covering juvenile driving privileges and alcohol or drug violations, refers to "a juvenile thirteen years of age or older and under the age of eighteen[.]" It is plain the Legislature intended RCW 66.44.365 to apply only to juveniles as so defined.
The remaining three statutes to which RCW 46.20.265(1) refers contain the following language: "a juvenile thirteen years of age or older and under the age of twenty-one."[5] These three statutes agree in more than just their operative language. The Legislature first enacted them in 1988 and one year later amended them identically. The first iteration of these statutes in 1988 read:
If a juvenile under eighteen years of age, but thirteen or over, is found by a court to have committed any offense that is a violation of this chapter, the court shall notify the department of licensing within twenty-four hours after entry of the judgment.
Laws of 1988, ch. 148, § 4 (RCW 69.41.265(1)); Laws of 1988, ch. 148, § 5 (RCW 69.50.420(1)); Laws of 1988, ch. 148, § 6 (RCW 69.52.070(1)). Thus, in the same bill in 1988, the Legislature set the age range of these three statutes to coincide with the Juvenile Justice Act's definition of juvenile.
The very next year, however, again in the same bill, the Legislature changed its mind and extended the age range of the three statutes to include ages 18, 19, and 20. See Laws of 1989, ch. 271, §§ 119, 120, and 121 (changing the language of the three statutes to the current versions, quoted below).[6] *558 It is thus abundantly clear the Legislature knew precisely what it was doing when it set the age range in the most current version of RCW 69.50.420(1) at 13 to under 21, despite using the word "juvenile" in the same sentence. "[A] change in legislative intent is presumed when a material change is made in a statute." Rhoad v. McLean Trucking Co., 102 Wash.2d 422, 427, 686 P.2d 483 (1984). There can be no ambiguity whatsoever about this; a claim the Legislature might have inadvertently juxtaposed two conflicting definitions, creating ambiguity, is simply not sustainable in light of the enactment history of the statutes.[7]
In State v. Shawn P., 122 Wash.2d 553, 559, 859 P.2d 1220 (1993), we said with reference to RCW 46.20.265(1), "While the legislation refers to `juveniles', it is clear that for purposes of the revocation provisions, the term is limited to juveniles who are 13 years of age or older and under age 18." (Footnote omitted.) In view of the foregoing analysis, this statement is dictum because it does not account for all the statutes, with their varying age ranges, referenced in RCW 46.20.265(1). The parties in Shawn, P. were all under 18 and undisputedly under the jurisdiction of the Juvenile Justice Act. The Shawn P. court thus did not have to address the central question in the present case, the status of minors 18, 19, or 20 years old. That may account for the imprecision in the above-cited language.
Although we do not hold the statutes are ambiguous and require construction, we note the Department below conceded the statutes were ambiguous. Even treating them as ambiguous, however, and construing them according to the ordinary rules of statutory construction, we arrive at the same interpretation of the statutes. Davis perceives ambiguity in the first phrase of RCW 69.50.420(1):
If a juvenile thirteen years of age or older and under the age of twenty-one is found by a court to have committed any offense that is a violation of this chapter, the court shall notify the department of licensing within twenty-four hours after entry of the judgment.
The statute references "a juvenile" but then specifies the range of ages within its purview as 13 or older to under 21. Chapter 69.50 RCW, the Uniform Controlled Substances Act, does not define "juvenile" in its definitions section. See RCW 69.50.101 (definitions). Davis asserts the statute is therefore ambiguous because the Juvenile Justice Act's definition of juvenilethose 13 or older but under 18is the definition that must apply. He does not indicate why we must apply that definition, other than to say, "It is a far stretch to argue that the term `juvenile' has been redefined by the wording of RCW 69.50.420." Br. of Resp't at 3. Davis does not articulate why the Legislature may not define juvenile one way in one chapter to further the purposes of that chapter, and another way in another chapter to further different purposes. See, e.g., RCW 72.05.020(3) ("`Juvenile' means a person under the age of twenty-one who has been sentenced to a term of confinement under the supervision of the department under RCW 13.40.185."); RCW 74.15.020(4) ("`Juvenile' means a person under the age of twenty-one who has been sentenced to a term of confinement under the supervision of the department under RCW 13.40.185.").
The glaring problem with Davis's argument is that in asserting we should adopt the Juvenile Justice Act's definition of "juvenile," he does not offer us any guidance on what we should do with the language of RCW 69.50.420(1) referring to juveniles as those 13 or older but younger than 21. A fundamental canon of construction holds a statute should not be interpreted so as to render one part inoperative. Colautti v. Franklin, 439 U.S. 379, 392, 99 S.Ct. 675, 58 L.Ed.2d 596 *559 (1979); City of Seattle v. Department of Labor & Indus., 136 Wash.2d 693, 701, 965 P.2d 619 (1998) ("[s]tatutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous." (quoting Whatcom County v. City of Bellingham, 128 Wash.2d 537, 546, 909 P.2d 1303 (1996) (citations omitted))). Davis's approach would render the 13-to-under-21 language in RCW 69.50.420(1) essentially inoperative.
Two equally absurd situations would result from Davis's approach. In one, we would be obliged totally to ignore the 13-to-under-21 language as if it were nonexistent, and as if the Legislature had not amended the statute specifically to insert that language; and focus instead solely on the word "juvenile," as defined by the Juvenile Justice Act. In the second situation, courts would follow the statutory direction to report 18-, 19-, and 20-year-olds who had just been convicted of a drug offense to the Department, regardless of the fact they are not juveniles, and the Department would then do absolutely nothing with the reports, because, according to Davis, RCW 46.20.265(1) applies only to those under 18. Davis speculates this information might be useful for study purposes, but offers no proof that this was the legislative intent, and no reasons why the Department of Licensing would want to know the names of 18-, 19-, and 20-year-olds who had been convicted of a drug offense. The legislative scheme we are considering speaks to courts informing the Department of drug convictions of people under 21 so that the Department can suspend their licenses. Indeed, in the March 31, 1989 fiscal summary of E2SHB 1793, the bill that became Laws of 1989, ch. 271, the Senate Ways and Means Committee said this about Part I (Criminal Penalties), Subpart C (Juvenile Driver's License Revocation):
JUVENILE DRIVER'S LICENSE REVOCATION: Modifies existing provisions of law relating to revocation of a juvenile's drivers license for specified alcohol or drug-related offenses.
1989-91 FISCAL IMPACT: Minor costs to the Department of Licensing to manage an increase in the number of driver's license revocations.
APPROPRIATION: None.
The Senate Ways and Means Committee plainly did not contemplate any costs for studying or monitoring would result from the changes to the law in the statutes at bar. The Committee plainly understood the import of the amendments to be for the purpose of expanding driver's license revocations, and noted the marginal costs stemming from the increase in license revocations. To attribute any other purpose to the 1989 amendments to the triggering statutes would be tendentious conjecture.[8]
The better approach here is to give effect to the Legislature's age specification and decline to adopt the Juvenile Justice Act definition of "juvenile." Such an approach harmonizes the language, as we ordinarily attempt to do in construing statutes. State v. Thorne, 129 Wash.2d 736, 761, 921 P.2d 514 (1996). In the statute, "juvenile" is a general term made more specific by the definition, over 13 but under 21, that follows in the sentence. The principle of ejusdem generis applies: "[S]pecific terms modify or restrict the application of general terms where both are used in sequence." Dean v. McFarland, 81 Wash.2d 215, 221, 500 P.2d 1244, 74 A.L.R.3d 378 (1972).
Moreover, it would be wrong to concentrate solely on the meaning of "juvenile" in isolation. "The meaning of a particular word in a statute `is not gleaned from that word alone, because our purpose is to ascertain legislative intent of the statute as a whole.'" Whatcom County, 128 Wash.2d at 546, 909 P.2d 1303 (quoting State v. Krall, 125 Wash.2d 146, 148, 881 P.2d 1040 (1994)). In view of the Legislature's deliberately extending the age range in the three statutes quoted above from 18 to 21, there can be no question the Legislature intended the statutes *560 to apply to those between the ages of 18 and 21.
Also, the rule of statutory construction that trumps every other rule"the court should not construe statutory language so as to result in absurd or strained consequences," In re Custody of Smith, 137 Wash.2d 1, 8, 969 P.2d 21 (1998) (quoting Duke v. Boyd, 133 Wash.2d 80, 87, 942 P.2d 351 (1999))is not violated here. In the absence of direction from the Legislature that the definition of "juvenile" appearing in the Juvenile Justice Act applies to all Washington statutes, there is nothing absurd or strained in accepting the specific statutory definition of "juvenile" appearing in RCW 69.50.420(1) and RCW 46.20.265(1).[9]
Finally, no question of fundamental fairness relating to notice of the effect of the statute is present. The statute is certainly not vague:
A statute is void for vagueness if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its applicability. The context of the entire statute is considered by the court to determine a sensible, meaningful, and practical interpretation. The fact that some terms in a statute are not defined does not mean the enactment is unconstitutionally vague.
State v. Lee, 135 Wash.2d 369, 393, 957 P.2d 741 (1998). If a potential criminal contemplating violating the Uniform Controlled Substances Act diligently reads in advance the statutes concerning what may happen to him or her if convicted, that person is unlikely to be confused or misled by the wording of RCW 69.50.420(1).
In summary, the statutes by their plain language apply to persons 13 or over and under 21. That the Legislature intended them to apply to persons 13 or over and under 21 is manifest in the change the Legislature made to the age range in 1989.[10]
B. EQUAL PROTECTION
Davis also asserts the Department's reading of the statutes denies him equal protection. His arguments are sketchy, but the Court of Appeals discussed them in full before rejecting them. Davis, 90 Wash.App. at 376-78, 952 P.2d 197.
The "Equal Protection Clause requires that persons similarly situated with respect to the legitimate purposes of the laws receive like treatment." In re Detention of Dydasco, 135 Wash.2d 943, 951, 959 P.2d 1111 (1998). The burden is on the party challenging the classification. State v. Coria, 120 Wash.2d 156, 172, 839 P.2d 890 (1992); In re Personal Restraint Petition of Stanphill, 134 Wash.2d 165, 175, 949 P.2d 365 (1998). By virtue of his equal protection claim, Davis represents people in the age class 18 through 20 years whose licenses have been revoked pursuant to RCW 46.20.265(1). This class is neither suspect nor semi-suspect, nor is a fundamental constitutional right involved, so we must apply a rational basis analysis to determination of Davis's claim. State v. Shawn P., 122 Wash.2d 553, 859 P.2d 1220 (1993); In re Boot, 130 Wash.2d 553, 925 P.2d 964 (1996). *561 "The rational relationship test is the most relaxed and tolerant form of judicial scrutiny under the equal protection clause. Under this test, the legislative classification will be upheld unless it rests on grounds wholly irrelevant to achievement of legitimate state objectives." Shawn P., 122 Wash.2d at 561, 859 P.2d 1220. (Footnote omitted.)
Davis's equal protection argument is based on two class distinctions: (1) the distinction between those 18 to 20 and those under 18, and (2) the distinction between those 18 to 20 and those 21 or over. He notes those under 18 have the opportunity to have their licenses reinstated pursuant to the revocation statute, while those over 18 do not. He also notes the revocation statute does not apply at all to people 21 or older. The essence of his argument, although he does not state it, is he is similarly situated with all persons who have had judgments entered against them under the Uniform Controlled Substances Act, but he is being treated differently from those under 18, who have the opportunity to have their licenses reinstated, and from adults, who do not have their licenses revoked at all. Moreover, although again he does not state it, Davis's argument implies these distinctions are "wholly irrelevant to achievement of legitimate state objectives."
As to his first contention, he is simply wrong because he misreads the statute. RCW 46.20.265(2) provides:
The driving privileges of the juvenile revoked under subsection (1) of this section shall be revoked in the following manner:
(a) Upon receipt of the first notice, the department shall impose a revocation for one year, or until the juvenile reaches seventeen years of age, whichever is longer.
(b) Upon receipt of a second or subsequent notice, the department shall impose a revocation for two years or until the juvenile reaches eighteen years of age, whichever is longer.
Both subsections (a) and (b) state the revocation period in the alternative: revocation for one or two years, or until the juvenile reaches 17 or 18, respectively. In Davis's case, the first alternative in both subsections (a) and (b) would apply to him, and the second alternative would apply to someone under 18. There is, therefore, no disparity in the treatment of those under the age of 21 with respect to the period of license revocation.
The second differing treatment Davis complains of is between minors and adults. Adults (those 21 or over) do not have their licenses revoked for a drug conviction. The Legislature created this age classification in the challenged statutes. This classification is obviously based on the Legislature's judgment that adults and minors are not similarly situated and should be treated differently. Such age classifications are common in our statutes.
The Legislature often makes age-based distinctions in establishing legal consequences, and does not always set the age of majority at 18. For instance, one must be 21 to be served alcohol or remain in a tavern or restaurant that serves alcohol. RCW 66.44.310(1)(a). On the other hand, professional musicians, professional disc jockeys, and others may remain in such establishments during the course of their employment if they are 18 or older. RCW 66.44.316(1). See also RCW 9A.04.050 (children under 8 years not criminally culpable while for children 8 to 12 there is only a presumption are not criminally culpable); RCW 13.40.110 (children 15 and over to be tried as adults for certain enumerated offenses); RCW 26.28.060 ("child" labor proscribed for those under 14 years of age); RCW 46.61.503 (penalties for drivers under 21 consuming alcohol with blood alcohol level .02 or higher). For Davis, a minor, to assert he is similarly situated to adults for the purposes of equal protection is to deny the age-old distinction Anglo-American law has always made between minors and adults.
These age distinctions are based on society's judgments about maturity and responsibility. We make such judgments in civil law as well as criminal. In Washington, for instance, there is a conclusive presumption a child under six is incapable of negligence. Price v. Kitsap Transit, 125 Wash.2d 456, 463, 886 P.2d 556 (1994). Other states have chosen a different age. See, e.g., Holbrock v. Hamilton Distrib., Inc., 11 Ohio St.2d 185, *562 228 N.E.2d 628, 629 (1967) (children under seven cannot be contributorily negligent); Pino v. Szuch, 185 W.Va. 476, 408 S.E.2d 55, 57 (1991) (children under seven cannot be liable for negligence). Our religious traditions have also established ages at which a young person first becomes morally responsible for his or her actions.
The bases for these judgments are not susceptible of scientific proof, as there is no objective measure of maturity or responsibility. Justice Holmes made the point over 70 years ago:
When a legal distinction is determined, as no one doubts that it may be, between night and day, childhood and maturity, or any other extremes, a point has to be fixed or a line has; to be drawn, or gradually picked out by successive decisions, to mark where the change takes place. Looked at by itself without regard to the necessity behind it the line or point seems arbitrary. It might as well or nearly as well be a little more to one side or the other. But when it is seen that a line or point there must be, and that there is no mathematical or logical way of fixing it precisely, the decision of the Legislature must be accepted unless we can say that it is very wide of any reasonable mark.
Louisville Gas & Elec. Co. v. Coleman, 277 U.S. 32, 41, 48 S.Ct. 423, 72 L.Ed. 770 (1928) (Holmes, J., dissenting). Here, the Legislature's decision concerning the ages for revoking driver's licenses is not very wide of any reasonable mark. The Legislature clearly envisioned young people cherish their privilege to drive and concluded one way of deterring young people from using controlled substances was to take away their driver's licenses if they do. As we said of this policy in Shawn P.:
The Legislature also concluded that youths would be deterred from using alcohol by the threat of license revocation. This and similar legislation in other states recognizes that young people place a high value on their drivers' licenses. The purpose of this type of legislation is to help juveniles avoid using alcohol by providing the additional incentive of loss of driving privileges. The laws are thus designed, in part, to give juveniles a reason to say no and to provide them with a powerful peeracceptable excuse to refrain from using alcohol.
Shawn P., 122 Wash.2d at 563, 859 P.2d 1220.
While we could reach different conclusions about where to set the age distinctions, we cannot say the 1989 amendments to Title 69 RCW triggering statutes are "wholly irrelevant to achievement of legitimate state objectives." The statutes in the present case embody the "legitimate state objective" of deterring young people from using drugs.[11] Davis has not met his burden to show the statutes are unconstitutional and his equal protection argument fails.[12]

CONCLUSION
The challenged statutes apply to Davis. The Legislature 1989 plainly intended *563 to apply the license revocation provisions of RCW 46.20.265(1) to persons between the ages of 13 and 21 who committed certain enumerated RCW 69.50 offenses. Davis's equal protection argument is also unpersuasive. We affirm the Court of Appeals decision to dissolve the trial court's injunction preventing revocation of Davis's driver's license.
GUY, C.J., and DURHAM, SMITH and IRELAND, JJ., concur.
ALEXANDER, J. (dissenting).
In my view, RCW 46.20.265(1) does not apply to Brett Davis. I reach that conclusion because Davis is not a juvenile. He, therefore, should not be deprived of his license to drive due to his conviction for possession of marijuana. Because the majority concludes otherwise, I dissent.
As the majority observes, RCW 46.20.265(1) gives the Department of Licensing (Department) the authority to revoke the driving privileges of a "juvenile" when the Department receives notice from a court "pursuant to RCW 69.50.420(1)." Majority op. at 555. Here, the Department received notice from the Grant County District Court that 19-year-old Brett Davis had pleaded guilty to a charge of possession of marijuana. Based on that information, the Department suspended Davis's driving privilege. A Grant County superior court judge, thereafter, permanently enjoined the Department from suspending Davis's driver's license, concluding that the Department did not have authority to revoke Davis's license because Davis was over the age of 17 and was not, therefore, a juvenile. In my view, the trial court was on firm ground in entering the injunction and the Court of Appeals erred in setting it aside.
As the experienced trial judge observed in his comprehensive memorandum opinion, the statute which provides for the revocation of driver's licenses, RCW 46.20.265, unambiguously provides that the license of a "juvenile" may be revoked when the Department receives notice from a court that the juvenile has committed any of certain offenses, including possession of marijuana. Unfortunately, the term "juvenile" is not defined in Title 46 RCW. It is defined only in Title 13 RCW as "any individual who is under the chronological age of eighteen years and who has not been previously transferred to adult court." RCW 13.40.020(14). The trial court concluded that when the Legislature used the term "juvenile" in RCW 46.20.265 it meant a juvenile as defined in Title 13 RCW. The trial court so concluded despite taking note of the Department's argument that the Legislature meant the word "juvenile" to mean a "minor" rather than a juvenile as defined in the Juvenile Justice Act of 1977, because RCW 69.50.420(1) requires courts to notify the Department of violations of the chapter by a "juvenile thirteen years of age or older and under the age of twenty-one." The trial court observed that it could find "no support in law or common usage for the proposition that `juvenile,' as that term was used in 1988 or 1989, could reasonably be interpreted to mean `persons under 21.'" Pet. for Review, mem. op., at A-16. It went on to say "[b]ut even if it reasonably could be given such meaning because of its juxtaposition with the phrase `under the age of 21', that would only result in RCW 69.50.420 being construed to require a court to send the `triggering notice' to DOC." Pet. for Review, mem. op., at A-16. With those views I concur.
Unfortunately, the majority pays little heed to the plain language of RCW 46.20.265(1), the statute which provides for revocation of driving privileges. If it had fully heeded the plain language of that statute it would not have reached the conclusion it did. Indeed, I suspect that many readers of the majority opinion will be bemused when they learn that the word "juvenile" does not have the well-known meaning given to it in the Juvenile Justice Act of 1977"any individual who is under the chronological age of eighteen years." RCW 13.40.020(14). Any such bewilderment will be understandable in light of the fact that this court fairly recently looked at RCW 46.20.265, and twice indicated that the term "juvenile" had the meaning given to the term in RCW 13.40.020(14). State v. Shawn P., 122 Wash.2d 553, 559 n. 16, 564 n. 39, 859 P.2d 1220 (1993). To say the least, it is confusing for this court to now *564 say something very differentthat the term "juvenile," as used in RCW 46.20.265(1), includes within its sweep persons over age 17. While I think it is reasonable to speculate that the reference to juveniles between ages 18 and 21 in RCW 69.50.420(1) came about simply as a result from less than careful legislative drafting, I have no trouble concluding that the Legislature did not intend to expand the definition of "juvenile" as that term is used in RCW 46.20.265(1).
Finally, while I agree with the majority that RCW 69.50.420(1) unambiguously refers to a "juvenile thirteen years of age or older and under the age of twenty-one," I am satisfied that the effect of the statute is merely to require courts to send a notice to the Department. The majority's concern that the Department would not be able to act on the report if the word "juvenile" is given its generally accepted meaning is really immaterial since we are dealing here with unambiguous statutes. We, therefore, need not engage in construing them. See Vita Food Prods, v. State, 91 Wash.2d 132, 587 P.2d 535 (1978).
JOHNSON, MADSEN and SANDERS, JJ., concur.
NOTES
[1] "We do not inquire what the legislature meant; we ask only what the statute means." Oliver Wendell Holmes, The Theory of Legal Interpretation, 12 HARV. L. REV. 417, 419 (1899). "[I]t seems axiomatic that the words of a statute  and not the legislators' intent as such  must be the crucial elements both in the statute's legal force and in its proper interpretation." LAURENCE H. TRIBE, CONSTITUTIONAL CHOICES 30 (1985).
[2] It is noteworthy that other chapters of Washington's juvenile code, Title 13 RCW, contain definitions of "juvenile" and each employs language similar to that of RCW 13.40.020 confining the definition to that chapter only. See, e.g., RCW 13.32A.030(3) (family reconciliation act); RCW 13.34.030(1) (dependency/termination of parental rights).
[3] RCW 13.40.265(1)(a) provides:

If a juvenile thirteen years of age or older is found by juvenile court to have committed an offense while armed with a firearm or an offense that is a violation of RCW 9.41.040(1)(b)(iii) or chapter 66.44, 69.41, 69.50, or 69.52 RCW, the court shall notify the department of licensing within twenty-four hours after entry of the judgment.
[4] RCW 9.41.040(5) provides:

In addition to any other penalty provided for by law, if a person under the age of eighteen years is found by a court to have possessed a firearm in a vehicle in violation of subsection (1) of this section or to have committed an offense while armed with a firearm during which offense a motor vehicle served an integral function, the court shall notify the department of licensing within twenty-four hours and the person's privilege to drive shall be revoked under RCW 46.20.265.
[5] RCW 69.41.065(1)prescription drug violations provides:

If a juvenile thirteen years of age or older and under the age of twenty-one is found by a court to have committed any offense that is a violation of this chapter, the court shall notify the department of licensing within twenty-four hours after entry of the judgment.
RCW 69.50.420(1)controlled substance violations provides:
If a juvenile thirteen years of age or older and under the age of twenty-one is found by a court to have committed any offense that is a violation of this chapter, the court shall notify the department of licensing within twenty-four hours after entry of the judgment.
RCW 69.52.070(1) provides:
If a juvenile thirteen years of age or older and under the age of twenty-one is found by a court to have committed any offense that is a violation of this chapter, the court shall notify the department of licensing within twenty-four hours after entry of the judgment.
[6] The "bill form" of these changes appears in the session laws of Washington as follows:

If a juvenile ((under eighteen years of age, but thirteen or over,)) thirteen years of age or older and under the age of twenty-one is found by a court to have committed any offense that is a violation of this chapter, the court shall notify the department of licensing within twenty-four hours after the entry of the judgment.
[7] The phrase "juvenile thirteen years of age or older and under the age of eighteen" appearing in RCW 66.44.365 contains an obvious tautology if one assumes "juvenile" always means 13 years of age or older and under the age of 18. It is not our function, however, to act as legislative wordsmiths and add to or detract from patently obvious legislative intent simply because of some minor imprecision or faulty diction in a statute.
[8] It is noteworthy that another part of the same legislation, creating a juvenile offenders structured residential program, directed DSHS to "study the effectiveness of programs of the type created in this section." Laws of 1989, ch. 271, § 115(6). No similar directive to study juvenile license revocations appears in the legislation.
[9] Indeed, the Legislature has specifically declined to adopt such a universal definition for the age of adulthood; RCW 26.28.010 states:

Except as otherwise specifically provided by law, all persons shall be deemed and taken to be of full age for all purposes at the age of eighteen years.
(Emphasis added.)
[10] The dissent says the definition of "juvenile" is both "well-known" and "generally accepted," and can have only the meaning set out in the Juvenile Justice Act of 1977. Dissent at 564. This is not so. Numerous statutes define "juvenile" differently. See RCW 69.50.420(1), RCW 69.41.065(1), RCW 69.52.070(1), RCW 72.05.020(3), and RCW 74.15.020(4). The dissent would have us ignore the explicit age specifications in those statutes because they are not "well-known" or "generally accepted."

The dissent's approach renders meaningless the statutory requirement to send the convictions of 18-to-20-year-olds to the Department of Licensing. Rather than following a cardinal principle of statutory constructiongiving effect to legislative languagethe dissent cavalierly concludes the Legislature either made a drafting error or just made a bad policy choice. Dissent at 3-4. While such conclusions may on occasion be arguable, we know here the Legislature specifically changed the age range of the applicable statutes one year after it had enacted them. To fail to give effect and meaning to the Legislature's actions is to disregard the clear action of a coordinate constitutional branch of government.
[11] In Shawn P., we found this statutory scheme to meet legitimate state objectives noting the legislative statement of purpose for the statute at its 1988 enactment:

The legislature finds that many persons under the age of eighteen unlawfully use intoxicating liquor and controlled substances. The use of these substances by juveniles can cause serious damage to their physical, mental, and emotional well-being, and in some instances results in life-long disabilities.
The legislature also finds that juveniles who unlawfully use alcohol and controlled substances frequently operate motor vehicles while under the influence of and impaired by alcohol or drugs. Juveniles who use these substances often have seriously impaired judgment and motor skills and pose an unduly high risk of causing injury or death to themselves or other persons on the public highways.
The legislature also finds that juveniles will be deterred from the unlawful use of alcohol and controlled substances if their driving privileges are suspended or revoked for using illegal drugs or alcohol.
Laws of 1988, ch. 148, § 1.
[12] It is not the province of this Court to second guess the wisdom of the Legislature's policy judgment so long as the Legislature does not offend constitutional precepts. "If the regulation tends to promote public safety, health, morals or welfare, then its wisdom or necessity is a matter left exclusively to the legislative body." City of Seattle v. Montana. 129 Wash.2d 583, 592, 919 P.2d 1218 (1996).