13 P.3d 677 (2000)
Roger A. WINGERT, David Mauldin, Russell A. Childs, Terence Swannack, Rick Wallace, Trever Vardeur, Jason C. Varieor, Joseph Leach, Michael J. Kelly, Scott Mills, Marvin Posick, Mark Johanneck, Lonnie Pappas, Eric R. Staley, Robert Ostler, Randy Everett, Richard Oughton, Dave L. Allen, Tarry Rohr, Richard P. Somes, Kyle Jones, Keith McDonel, Ralph Sweet, Matt Carroll, Troy D. Cates, Wendell Crosby, Chuck Deaver, Joseph Loran, Kirby L. Soike, Gary Doehring, Daniel G. Fisher, Stephen T. Leighton, Richard A. Biel, Grover W. Smith, Rick Storlie, Rick Wallace, John Eugene Baker, Billy Duryee, Max D. McMahan, Robert L. Ray, Wallace R. Morgan, Keith Blaine, Gary D. Bolen, William Taft Case, Ralph Hubbard, Aaron J. Fortune, John E. Roufs, James Freyberg, Leslie Curt Holloway, Robert W. Jutte, Dennis M. Murdock, Doug Murray, Roger Hamblin, Robert A. Newman, Sr., Lawrence R. Baker, Bryan Hott, Mark Johnson, Ronald D. Reno, Kelly G. Burke, David L. Cook, Dean A. Ambler, William L. West, Jr., Robert Rucker, Jerry Townsend, Fred Sheppard, Eric C. Stone, Dan Purcell, Norman J. Roth, Ross D. Johnson, Michael J. Stout, Paul F. Mix, Gary D. Neuman, Jeffrey M. Read, Robert Murphy, Andrew Graden, Joel D. Johanneck, Nels F. Stromberg, Archer G. Martinson, Albert N. Peterson, John A. Rice, Thomas Schwendeman, Mark Hutton, Dean W. Talkington, M. Berger, Edward Murphy, Robert White, Stephen G. Pryor, Hermann Maag, Richard A. Nash, Jack F. O'Neal, Jan Mulhorn, and Raymond E. Ling, Appellants,
v.
YELLOW FREIGHT SYSTEMS, INC., A Washington State Corporation, Respondents.
No. 45794-2-I.
Court of Appeals of Washington, Division 1.
December 4, 2000.
As Amended January 5, 2001.
*679 Dmitri Iglitzen, Schwerin Campbell Barnard, Seattle for Appellants.
J. Markham Marshall, Seattle, for Respondents.
*678 BAKER, J.
Employees of Yellow Freight Systems, Inc. brought suit alleging failure of Yellow Freight to provide paid 10-minute rest periods during "overtime" hours in violation of Washington Administrative Code (WAC) XXX-XXX-XXX, and seeking lost wages pursuant to RCW 49.52.070. The trial court granted summary judgment in favor of the employer. Because the plain language of WAC 296-126-093 clearly provides for a paid 10 minute rest period at least every three hours, we hold that Yellow Freight's failure to provide these breaks gives rise to a wage claim under RCW 49.52.020. We reverse.

I
Yellow Freight Systems, Inc. employs workers at its Seattle terminal to stage freight, load, move, and unload truck trailers, drive trucks, and perform other labor. The employees are covered under a collective bargaining agreement. Yellow Freight employees commonly work longer than their regular 8-hour workday, for which they receive overtime compensation. If they work two hours of overtime or less at the end of their regular shift, they receive no rest period from the time their regular afternoon break ends at 2:45 until they are excused for the day, often at 6:30, a period of nearly four hours of uninterrupted physical labor.
Employees of Yellow Freight filed suit claiming that they are entitled to a break at least every three hours they work, thus entitling them to a paid 10-minute rest period during the overtime hours they work. They sought lost wages for each 10-minute period of work the company received from them when they should allegedly have been on break. Both parties brought motions for summary judgment. The trial court granted summary judgment in favor of Yellow Freight. The employees appeal.

II
At issue is whether WAC 296-126-092(4), which prohibits employers from working its employees more than three hours without a paid 10 minute rest period, applies to both regular and overtime hours worked; and if so, are employees deprived of those rest periods entitled to recover damages for lost wages. We are also asked to decide if the parties' collective bargaining agreement (CBA) supercedes the statute, or in the alternative, if the plaintiffs are limited to remedies under their CBA.
We first address the application of WAC 296-196-092(4) to overtime hours worked by employees. WAC 296-196-092 states in its entirety:
Meal periodsRest periods.
(1) Employees shall be allowed a meal period of at least 30 minutes which commences no less than two hours nor more than five hours from the beginning of the shift. Meal periods shall be on the employer's time when the employee is required by the employer to remain on duty *680 on the premises or at a prescribed work site in the interest of the employer.
(2) No employee shall be required to work more than five consecutive hours without a meal period.
(3) Employees working three or more hours longer than a normal work day shall be allowed at least one 30-minute meal period prior to or during the overtime period.
(4) Employees shall be allowed a rest period of not less than 10 minutes, on the employer's time, for each 4 hours of working time. Rest periods shall be scheduled as near as possible to the midpoint of the work period. No employee shall be required to work more than three hours without a rest period. (Emphasis added).
(5) Where the nature of the work allows employees to take intermittent rest periods equivalent to 10 minutes for each 4 hours worked, scheduled rest periods are not required.
The employees contend that subsection (4) is clear on its face: employers may not lawfully require employees to work longer than three consecutive hours without providing a rest period, regardless of whether the hours worked are regular hours, overtime hours, or a combination of the two.
Yellow Freight argues that the regulation is inherently contradictory and thus ambiguous. A statute is ambiguous if it is susceptible to more than one meaning or reasonable interpretation.[1] Yellow Freight claims that it need only provide one rest period for each four hours its employees work. It argues that the first and third sentences of subsection (4) may be harmonized if the 3-hour limit applies only to straight time hours worked, not to overtime hours. To support its argument, Yellow Freight analogizes WAC 296-126-092's treatment of rest periods to its meal period provisions. Subsections (1) and (2) prescribe similar guidelines for meal breaks as for rest periods, but then subsection (3) modifies the previous sections by specifying when meal periods should be provided during overtime hours. Yellow Freight concludes that because the WAC fails to explicitly address rest periods during overtime hours, none are required.[2]
We reject Yellow Freight's argument. A court need not construe unambiguous statutes, but instead should assume that the Legislature means exactly what it says.[3] Plain words do not require construction.[4] WAC 296-126-092(4) is not ambiguous when read as a whole, particularly in light of the definition of "hours worked" in WAC 296-126-002(8). Subsection (8) defines "hours worked" as "all hours during which the employee is authorized or required by the employer to be on duty on the employer's premises or at a prescribed work place." This definition does not distinguish between regular hours and overtime hours.
Likewise, WAC 296-126-092(4) does not differentiate between regular or overtime hours worked. It requires scheduling a rest period as nearly as possible to the midpoint of the usual 4 hour work period, but clearly and unambiguously prohibits working employees for longer than three consecutive hours without a rest period.[5]

III
We next address the employees' standing to sue for lost wages under RCW 49.52.050(2) and RCW 49.52.070. RCW 49.52.050 provides in pertinent part:
Any employer ... who ...
*681 (2) Wilfully and with intent to deprive the employee of any part of his wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract; ...
Shall be guilty of a misdemeanor.
Further, RCW 49.52.070 provides:
Any employer ... who shall violate any of the provisions of subdivisions (1) and (2) of RCW 49.52.050 shall be liable in a civil action by the aggrieved employee ...
Because RCW 49.52.050(2) expressly states that violation of any statute results in liability under the statute, the employees may bring a claim for lost wages based on an alleged violation of WAC 296-126-092(4).[6]
Yellow Freight argues that the employees have lost no wages, reasoning that failure to allow rest periods results in lost rest time, not lost wages. It points out that its employees are paid for every minute they actually work. It is correct that this case does not present the classic situation of employees performing labor during uncompensated periods of time.[7] But the argument collapses under the persuasive authority of Connors v. Consolidation Coal Company,[8] and principles of equity.
In Connors, a collective bargaining agreement required Consolidation Coal to contribute to its employees' pension plan funds for eight hours of work, computed as seven and one-half work hours and a one-half hour paid lunch break. A dispute ensued when employees were required to work through their lunch period, but Consolidated Coal did not increase the pension contributions. The court held that Consolidation Coal must contribute to the pension plan a total of eight and one-half hours, because the employer had received an additional one-half hour of labor not bargained for in the CBA. The court reasoned:
[W]hen an employer requests a miner to forego his contractual right to a lunch period, the employer cannot expect to gain the extra one-half hour of employee productivity without the concurrent responsibility to contribute to that employee's pension and health benefits.[[9]]
The Connors court cited Combs v. North River Energy Corp.[10] to illustrate the equity of its decision. In Combs, the court posed two hypotheticals to demonstrate the logic of requiring extra compensation for workers who worked through their paid lunch breaks. The extra compensation would be owed when:
(1) ... an employee stays in the mine and works an extra thirty minutes at the end of his regular eight-hour day, and (2) ... an employee works in the mine during the lunch period and then takes his thirty minute lunch break at the end of an eight hour day.[[11]]
The same reasoning applies to this case, although Yellow Freight's obligation is rooted in a regulatory requirement rather than a contractual one. Yellow Freight wants two *682 hours of work performed at the end of its employees' regular workday. If its employees are provided with the required 10-minute rest period, their workday will be extended by 10 minutes. Thus, they should receive compensation for two hours, 10 minutes. That the employees work through their break, leaving after two hours, does not relieve Yellow Freight of its obligation to pay for the additional 10 minutes of labor it receives when its employees are legally entitled to a rest break.
A contrary holding would leave Yellow Freight employees with no remedy for their employer's violation of WAC 296-126-092(4). Further, Yellow Freight would be unjustly enriched by the extra 10 minutes of labor its employees provided for each day they worked overtime without a break. In the aggregate, that gain is substantial and taken at the expense of Yellow Freight employees. Failure to allow employees who work in excess of three consecutive hours a paid 10 minute rest period gives rise to a wage claim under RCW 49.52.050(2), and RCW 49.52.070.
We further hold that an implied cause of action exists under RCW 49.12. A cause of action will be implied if a) the plaintiff is "within the class for whose `especial' benefit the statute was enacted;" b) the "legislative intent, explicitly or implicitly, supports creating or denying a remedy;" and c) "implying a remedy is consistent with the underlying purpose of the legislation."[12] Where a statute creates a new right but no remedy, the common law will provide that remedy.[13]
In Bennett, two 60 year old plaintiffs alleged that their employer terminated them because of their age. They sued under RCW 49.44.090, which generally provides that discrimination in employment decisions on the basis of age is an unfair employment practice. Among other defenses, the employer asserted that the plaintiffs had no civil cause of action because RCW 49.44.090 does not explicitly include one for age discrimination plaintiffs. The court disagreed and implied a cause of action, reasoning:
[W]e may rely on the assumption that the Legislature would not enact a statute granting rights to an identifiable class without enabling members of that class to enforce those rights. Moreover ... according a private right of action ... is consistent with [the] underlying legislative purpose.[[14]]
The Bennett factors similarly apply to the circumstances of this case. The parties agree that the workers' status as employees clearly makes them persons for whom WAC 296-126-092 was promulgated. Further, as in Bennett, we may rely on the assumption that the Department of Labor and Industries, through the delegated authority of the Legislature, would not create a right to regular, periodic rest periods if it did not intend for employees to be able to enforce that right. Finally, the remedial purpose of RCW 49.12 to ensure the health and welfare of Washington workers is consistent with implying a remedy. RCW 49.12.010 states:
The welfare of the state of Washington demands that all employees be protected from conditions of labor which have a pernicious effect on their health. The state of Washington, therefore, exercising herein its police and sovereign power declares that inadequate wages and unsanitary conditions of labor exert such pernicious effect.
In using the word "demands," the Legislature has forcefully communicated the importance it places on protecting employees from substandard working conditions.
Yellow Freight claims that a cause of action should not be implied because its failure to provide rest periods does not contravene the purposes of RCW 49.12. It argues that "inadequate wages" and "unsanitary conditions" as referenced in RCW 49.12.010 are the only "conditions of labor" which exert a pernicious effect. It goes on to argue that it pays its employees an overtime rate five times greater than the statutory minimum wage, which could hardly be characterized as *683 "inadequate" and because the employees allege no unsanitary conditions, it has not imposed pernicious working conditions on them. Reduced to its essence, Yellow Freight asserts that well-paid workers do not need periodic rest breaks.
Yellow Freight's argument misses the point of the industrial welfare statutes. First, working employees through required rest periods is a withholding of wages which renders the wages "inadequate" under RCW 49.12.010. More to the point, RCW 49.12 was enacted to protect the health and welfare of employees. RCW 49.12.020 provides:
It shall be unlawful to employ any person in any industry or occupation within the state of Washington under conditions of labor detrimental to their health ...
The parties do not dispute that rest periods are a "condition of labor." The promulgation of WAC 296-126-092 indicates that failure to provide regular, periodic rest periods is harmful to workers. Whether "detrimental" or "pernicious," working employees through statutorily mandated rest periods is unlawful and effects a harm WAC 296-126-092(4) was designed to prevent. To deny employees a remedy when their statutorily created right is violated would frustrate the purpose of the statute.[15]
Finally, Yellow Freight contends that the Legislature, in enacting RCW 49.12, provided explicit remedies for specific violations and criminal penalties for general violations. Hence, its failure to explicitly create a private cause of action for failure to provide rest periods implies its intention not to create a remedy.[16] The Bennett court, faced with a similar argument, disagreed. Like RCW 49.12, RCW 49.44 also contains explicit civil remedies in some situations, and criminal penalties for general violations.[17] Still, the court held that an implied right of action exists because, "[w]ithout an implicit creation of a remedy, the statute is meaningless."[18] Indeed, without a remedy for violations, employers could violate WAC 296-126-092 with impunity.[19] This would surely thwart the purpose of the regulation.[20]

IV
We finally consider Yellow Freight's contentions that the parties' collective bargaining agreement preempts WAC 296-126-092 or alternatively, that the employees are limited to the parties' grievance procedure pursuant to their CBA to resolve their break-time dispute. Yellow Freight first argues that RCW 49.12.187 allows it unrestricted freedom to negotiate rest periods which do not meet the minimum standards of WAC 296-126-092(4). The employees maintain that the statute simply ensures that their ability to bargain for better terms is not impeded, so long as the statutory minimum standards are met. RCW 49.12.187 states:
This chapter shall not be construed to interfere with, impede, or in any way diminish the right of employees to bargain collectively with their employers through representatives of their own choosing concerning wages or standards or conditions of employment.
*684 "In interpreting a statute, we do not construe a statute that is unambiguous."[21] A statute is ambiguous if it is susceptible to more than one meaning.[22] The differing interpretations of the statute earnestly advanced by the parties leads us to conclude that the statute is ambiguous. If a statute is ambiguous, we must construe it so as to effectuate the legislative intent "within the context of the entire statute."[23] Further, all statutory language used must be given effect, so that no portion is rendered meaningless or superfluous.[24] The meaning of a particular word in a statute "is not gleaned from that word alone, because our purpose is to ascertain legislative intent of the statute as a whole ."[25]
Considering the statute's language in its entirety and the remedial nature of its purpose evidences the Legislature's intention that employees should not be able to waive its minimum health and welfare standards. First, the stated areas of bargaining affected by the statute include "wages" as well as "standards" and "conditions of employment." Yellow Freight concedes that employees may not waive their statutory right to minimum wages and overtime compensation.[26] Because the term "wages" was included in the statute together with "standards" and "conditions of employment," the definition of "interfere," "impede," and "diminish" should not be different for "wages" than it would be for other "conditions of employment." Moreover, RCW 49.12 was enacted to protect the health and welfare of employees. To allow parties to collective bargaining agreements to ignore basic, minimum standards would frustrate the purposes of RCW 49.12.
Finally, such an interpretation comports with statutes and judicial decisions in other areas of employee health and welfare. In Lundborg v. Keystone Shipping Co.,[27] the Washington Supreme Court held that a collective bargaining agreement could not abrogate a maritime worker's historical and common law right to maintenance.[28] Likewise, Washington state worker compensation laws and minimum wage laws invalidate contracts purporting to waive those statutory rights.[29] In Lundborg, the court also noted that the United States Supreme Court has held invalid collective bargaining agreements which negotiate wages lower than the minimum set forth in the Fair Labor Standards Act of 1938.[30] The court summarized its position by stating:
[T]here is an extensive landscape of federal and state law dealing with the rights of workers holding that collective bargaining agreements do not supersede and cannot abrogate rights the law accords to workers. A CBA is not impervious to these numerous expressions of public policy, both statutory and court made, that accord greater solicitude to the legal rights of workers.[[31]]
Washington's manifest policy of protecting the health and welfare of its employees by requiring periodic rest periods may not be abrogated by collective bargaining agreements. So long as the provisions of RCW 49.12 operate as a base, parties may contract through collective bargaining for any terms that enhance or exceed those minimum standards.
*685 Yellow Freight finally argues that the employees must pursue their claims through the grievance procedure of the parties' collective bargaining agreement. We disagree. Yellow Freight concedes that employee wage claims under federal and state statutes are separate and distinct from rights under a collective bargaining agreement and as such, employees may seek redress by filing a lawsuit rather than pursuing grievance processes or administrative remedies.[32] As resolved earlier, the employees' claim is a wage claim and they are within their right to enforce their claim in court.
The order granting summary judgment to Yellow Freight is reversed and the cause remanded for trial on the issue of damages.
KENNEDY, J., and BECKER, J., concur.
REVERSED.
NOTES
[1] Washington Fed'n of State Employees v. State Personnel Bd., 54 Wash.App. 305, 309, 773 P.2d 421 (1989).
[2] Yellow Freight relies on Kreidler v. Eikenberry, 111 Wash.2d 828, 835, 766 P.2d 438 (1989); Bradley v. Dep't of Labor & Industries, 52 Wash.2d 780, 784, 329 P.2d 196 (1958) for the rule that "[t]he express mention of one thing implies the exclusion of another."
[3] Davis v. Dep't of Licensing, 137 Wash.2d 957, 963-64, 977 P.2d 554 (1999).
[4] Davis, 137 Wash.2d at 963-64, 977 P.2d 554 (quoting State v. McCraw, 127 Wash.2d 281, 288, 898 P.2d 838 (1995).
[5] The rest period provision and the meal period provisions combine to create some sort of rest for an employee approximately every two hours.
[6] Although WAC 296-126-092 is a regulation and not a statute, "[I]t has been established in a variety of contexts that properly promulgated, substantive agency regulations have the `force and effect of law'." Manor v. Nestle Food Co., 131 Wash.2d 439, 445, 932 P.2d 628 (1997) (quoting Chrysler Corp. v. Brown, 441 U.S. 281, 295, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979)) (citing 2 Am.Jur.2d, Administrative Law § 160, at 182 (1994)).
[7] The cases cited by the employees offer the typical examples of non-payment of wages: (e.g., Ebling v. Gove's Cove, Inc., 34 Wash.App. 495, 663 P.2d 132 (1983) where employer unilaterally paid commissioned sales employee a rate less than the parties had agreed it would pay; and Schilling v. Radio Holdings, Inc., 136 Wash.2d 152, 961 P.2d 371 (1998) where employer claimed that duty to pay wages for work performed was excused because of financial inability.). See also Lindell v. General Electric Co., 44 Wash.2d 386, 267 P.2d 709 (1954).
[8] 866 F.2d 599 (3d Cir. 1989).
[9] Connors, 866 F.2d at 602.
[10] No. CV 81-P-1164-W (N.D.Ala. Dec. 27, 1982).
[11] Connors, 866 F.2d at 602. Although Weeks v. Chief of the Washington State Patrol, 96 Wash.2d 893, 639 P.2d 732 (1982) addresses the issue of additional compensation for employees who worked through their paid lunch periods, the case is not germane to the issues in this case because different statutes/standards apply to Washington State Patrol Officers than to the employees of Yellow Freight.
[12] Bennett v. Hardy, 113 Wash.2d 912, 920-21, 784 P.2d 1258 (1990).
[13] Bennett, 113 Wash.2d at 920, 784 P.2d 1258.
[14] Bennett, 113 Wash.2d at 921, 784 P.2d 1258.
[15] Yellow Freight's reliance on Ludwig v. Mutual Real Estate Inv., 18 Wash.App. 33, 567 P.2d 658 (1977) (holding no implied cause of action in securities statute) is misplaced inasmuch Bennett v. Hardy superceded it.
[16] RCW 49.12.150 allows cause of action for employees paid less than minimum wage. RCW 49.12.175 allows a cause of action for employees paid different wages because of their sex. RCW 49.12.170 makes general violations of the chapter a misdemeanor.
[17] RCW 49.44.110 makes hiring out of state replacement employees a misdemeanor. RCW 49.44.130 makes compulsory lie detector tests a misdemeanor. RCW 49.44.135 allows private cause of action for requiring lie detector test.
[18] Bennett, 113 Wash.2d at 920, 784 P.2d 1258 (quoting McNeal v. Allen, 95 Wash.2d 265, 277, 621 P.2d 1285 (1980)).
[19] RCW 49.12.170 makes violations punishable by fine of not less than $25 and not more than $1,000, hardly an amount that would be considered a deterrent.
[20] RCW 49.12.105 allows employers to apply for a variance from these standards for good cause. Yellow Freight has proffered no reason other than its economic gain for denying overtime rest periods to its employees.
[21] Davis v. Dept. of Licensing, 137 Wash.2d 957, 963, 977 P.2d 554 (1999) (citing Food Servs. of Am. v. Royal Heights, Inc., 123 Wash.2d 779, 784-85, 871 P.2d 590 (1994)).
[22] Shoreline Community College Dist. No. 7 v. Employment Sec. Dept., 120 Wash.2d 394, 405, 842 P.2d 938 (1992).
[23] Davis, 137 Wash.2d at 963, 977 P.2d 554.
[24] Davis, 137 Wash.2d at 963, 977 P.2d 554 (citing Stone v. Chelan County Sheriff's Dep't, 110 Wash.2d 806, 810, 756 P.2d 736 (1988)).
[25] Davis, 137 Wash.2d at 963, 977 P.2d 554 (quoting State v. Krall, 125 Wash.2d 146, 148, 881 P.2d 1040(1994)).
[26] RCW 49.46.
[27] 138 Wash.2d 658, 981 P.2d 854 (1999).
[28] Maintenance for maritime workers corresponds to worker compensation for land-based employees.
[29] Lundborg, 138 Wash.2d at 670, 981 P.2d 854.
[30] 29 U.S.C. §§ 1-9(b).
[31] Lundborg, 138 Wash.2d at 670, 981 P.2d 854.
[32] See e.g., Albertson's, Inc. v. United Food & Commercial Workers Union, 157 F.3d 758 (9th Cir.1998), cert. denied, 528 U.S. 809, 120 S.Ct. 39, 145 L.Ed.2d 36 (1999).