[No. 32272-2-II.   Division Two.   November 22, 2005.]

THE DEPARTMENT OF TRANSPORTATION, WASHINGTON STATE FERRIES, *Appellant*, v. INLANDBOATMEN'S UNION OF THE PACIFIC, *Respondent*.

*Robert M. Mckenna, Attorney General,* and *David J. Slown, Assistant,* for appellant.

*Robert H. Lavitt* (of *Schwerin Campbell Barnard, L.L.P.*), for respondent.

¶1 MORGAN, J.* — When a former concessionaire decided not to renew a contract by which it was operating restaurants on Washington State ferries, the Washington State ferry system (WSF) proposed to form a contract with a new concessionaire that did not require the new concessionaire to offer jobs to the former concessionaire's employees or honor the former concessionaire's collective bargaining agreement. Acting as the collective bargaining agent for the

---

* Judge J. Dean Morgan heard oral argument in this case while serving as a member of this court. Since retired, he is now serving as judge pro tempore pursuant to RCW 2.06.150.

former concessionaire's employees, the Inlandboatmen's Union (IBU) filed an unfair labor practices complaint with the Marine Employees' Commission (MEC), which sustained IBU's complaint over WSF's objection. Reversing, we hold that the MEC lacked statutory authority to intervene in contract negotiations between WSF and a private concessionaire.

¶2 WSF is a division of the Washington Department of Transportation. It owns and operates a fleet of ferries, on some of which there formerly were small onboard restaurants that served the public.

¶3 IBU is the collective bargaining representative for several collective bargaining units. The one involved here is comprised of restaurant workers previously employed by Sodexho Marriott (Sodexho), a private concessionaire.

¶4 Before and during 2003, Sodexho operated the onboard restaurants under a contract between it and WSF (the restaurant contract). That contract expired at the end of 2003 if not renewed. Sodexho, not WSF, employed the restaurants' workers under a collective bargaining agreement (the Sodexho-IBU CBA) negotiated by it and IBU, the workers' collective bargaining representative.

¶5 In the late spring of 2003, Sodexho notified WSF that it did not wish to renew the restaurant contract at the end of the year. WSF then drafted a Request for Proposal (RFP) for the purpose of soliciting bids from other interested concessionaires. IBU requested that the RFP include language (hereafter the disputed language) that would have required the successful bidder to offer jobs to Sodexho's employees and honor the Sodexho-IBU CBA. WSF denied the request.

¶6 On June 17, 2003, IBU complained to the MEC that WSF was committing an unfair labor practice. WSF responded in part that the MEC lacked "jurisdiction" because the "members of the affected bargaining unit . . . are not 'ferry employees' within the meaning of RCW 47.64-

.011(5)."[1] The MEC took jurisdiction and, after an evidenttial hearing, upheld IBU's complaint. The MEC then ordered WSF to rescind the RFP and include the disputed language in any other RFP that might later issue, unless WSF and IBU bargained in good faith to the contrary. WSF appealed to the superior court, which affirmed, and then to this court.

¶7 The parties frame the question on appeal as whether the MEC had "jurisdiction." But the MEC is an administrative agency created by the Washington Legislature,[2] and such an agency has only such power (i.e., "jurisdiction") as the Washington Legislature chooses to grant.[3] Hence, we reframe the question as one of statutory construction: Does the MEC have statutory authority to intervene in contract negotiations between WSF and a private concessionaire?

¶8 Answering no, WSF cites and relies on RCW 47-.64.011, RCW 47.64.130, and RCW 47.64.280. Answering yes, IBU cites and relies on those statutes and, additionally, RCW 47.64.005, RCW 47.64.006, RCW 47.64.120, RCW 47-.64.140, and RCW 47.64.240. We examine those statutes in numerical order.

¶9 RCW 47.64.005 and RCW 47.64.006 are declarations of public policy rather than operative provisions. RCW 47-.64.005 declares that "sound labor relations are essential to the development of a ferry . . . system . . . ." RCW 47.64.006

---

[1] Administrative R. at 31.

[2] RCW 47.64.280(1) ("There is created the marine employees' commission."); RCW 47.64.011(9) (" 'Marine employees' commission' means the commission created in RCW 47.64.280.").

[3] *Inland Foundry Co. v. Spokane County Air Pollution Control Auth.*, 98 Wn. App. 121, 124, 989 P.2d 102 (1999) (administrative agency "has only the jurisdiction conferred by its authorizing statute"), *review denied*, 141 Wn.2d 1008 (2000); *see also, Jackstadt v. Wash. State Patrol*, 96 Wn. App. 501, 515, 976 P.2d 190 (1999) ("Administrative agencies have only the express powers granted to them and those necessarily implied from the statutory grant of authority.").

declares in part that the public policy of the State of Washington is to:

> (3) promote harmonious and cooperative relationships between the ferry system and *its* employees by permitting *ferry employees* to organize and bargain collectively; . . . (5) prohibit and prevent all strikes or work stoppages by *ferry* employees; (6) protect the rights of *ferry employees* with respect to employee organizations; and (7) promote just and fair compensation, benefits, and working conditions for *ferry system employees*. . . . [4]

¶10 RCW 47.64.011 defines who is a "ferry employee," as well as certain other terms. Insofar as pertinent here, it states:

> (3) "Collective bargaining representative" means the persons designated by the secretary of transportation and employee organizations to be the exclusive representatives during collective bargaining negotiations.
>
> . . . .
>
> (5) "Ferry employee" means any employee *of the marine transportation division of the department of transportation* who is a member of a collective bargaining unit represented by a ferry employee organization . . . .
>
> (6) "Ferry employee organization" means any labor organization recognized to represent a collective bargaining unit of *ferry employees*.
>
> (7) "Ferry system management" means those management personnel of the marine transportation division of the department of transportation who have been vested with the day-to-day management responsibilities of the Washington state ferry system . . . and who are not members of a collective bargaining unit represented by a ferry employee organization.[5]

¶11 RCW 47.64.120 imposes on "ferry system management" and "ferry employee organizations" a duty to negotiate in good faith on the wages, hours, and other employment conditions of "ferry employees." It states in part:

---

[4] RCW 47.64.006 (emphasis added).

[5] RCW 47.64.011 (emphasis added).

(1) Ferry system management and ferry system employee organizations, through their collective bargaining representatives, shall meet at reasonable times, to negotiate in good faith with respect to wages, hours, working conditions, insurance, and health care benefits as limited by RCW 47.64.270, and other matters mutually agreed upon. . . .

(2) Upon ratification of bargaining agreements, ferry system employees are entitled to an amount equivalent to the interest earned on retroactive compensation increases. . . .

¶12 RCW 47.64.130 describes when ferry system management or a ferry system employee organization will be deemed to have engaged in an unfair labor practice. It states in part:

(1) It is an unfair labor practice for ferry system management or its representatives:

. . . .

(e) To refuse to bargain collectively with the representatives of *its* employees.[6]

¶13 RCW 47.64.140 bars any ferry employee or ferry employee organization from instigating or participating in a strike or work stoppage. It provides in part:

(1) It is unlawful for any *ferry system employee* or any employee organization, directly or indirectly, to induce, instigate, encourage, authorize, ratify, or participate in a strike or work stoppage against the ferry system.

(2) It is unlawful for ferry system management to authorize, consent to, or condone a strike or work stoppage; or to conduct a lockout; . . .

. . . .

(4) The right of *ferry system employees* to engage in strike or work slowdown or stoppage is not granted and nothing in this chapter may be construed to grant such a right.

RCW 47.64.140 (emphasis added).

¶14 RCW 47.64.240 requires that, in certain situations, the "parties" submit to binding arbitration. It clearly refers back to RCW 47.64.200, which identifies the "parties" as

---

6 RCW 47.64.130 (emphasis added).

"ferry system management" and a ferry system "employee organization."

¶15 RCW 47.64.280 creates the MEC and describes its authority. It states in part:

(1) There is created the marine employees' commission. . . .

(2) The marine employees' commission shall: (a) Adjust all complaints, grievances, and disputes between labor and management arising out of the operation of the ferry system as provided in RCW 47.64.150; (b) provide for impasse mediation as required in RCW 47.64.210; (c) conduct fact-finding and provide salary surveys as required in RCW 47.64.220; and (d) provide for the selection of an impartial arbitrator as required in RCW 47.64.240(5).

(3) In adjudicating all complaints, grievances, and disputes, the party claiming labor disputes shall, in writing, notify the marine employees' commission, which shall make careful inquiry into the cause thereof and issue an order advising the *ferry employee*, or the ferry employee organization representing him or her, and the department of transportation, as to the decision of the commission.

. . . . The orders and awards of the commission are final and binding upon any ferry employee or employees or their representatives affected thereby and upon the department.

RCW 47.64.280 (emphasis added). RCW 47.64.150 states in part that "[a]n agreement with a ferry employee organization that is the exclusive representative of ferry employees in an appropriate unit may provide procedures for the consideration of ferry employee grievances and of disputes over the interpretation and application of agreements." RCW 47.64.210 states in part that under certain circumstances "the marine employees' commission shall, upon the request of" a "party"—according to the immediately preceding statute, RCW 47.64.200, a "party" is either ferry system management or a ferry employee organization—"appoint an impartial and disinterested person to act as mediator." RCW 47.64.220(1) provides in part that "[p]rior to collective bargaining, the marine employees' commission shall conduct a salary survey" which, when published, shall compare

the "wages, hours, employee benefits, and conditions of employment of involved ferry employees with those of public and private sector employees" in certain locales. When read with RCW 47.64.200-.230, RCW 47.64.240 requires binding arbitration between ferry system management and a ferry employee organization under certain defined circumstances.

█ █ ¶16 "[R]ead together as constituting one law,"[7] these statutes clearly show that the Washington Legislature has authorized the MEC to intercede in labor negotiations between WSF on the one hand and, on the other hand, ferry employees and a ferry employee organization. Just as clearly, however, these statutes do *not* show that the legislature has authorized the MEC to intercede in contract negotiations between WSF and a private concessionaire who by definition does not employ "ferry employees" within the meaning of RCW 47.64.011(5). Neither party having cited any other statutes from which the MEC might derive authority, we conclude that it lacked statutory authority here.

¶17 IBU advances several contentions designed to forestall this conclusion. First, it argues that "RCW 47.64.120 directs the ferry system and the IBU to negotiate in good faith with respect to other matters mutually agreed upon."[8] Although that might be true in other circumstances, it is not true in these. The cited statute requires the ferry system and *ferry system employee organizations, through their collective bargaining representatives,*" to negotiate in good faith. RCW 47.64.011(6) and (5), respectively, define "ferry employee organization" as "any labor organization recognized to represent a collective bargaining unit of ferry employees," and "ferry employee" as "any employee of the marine transportation division of the department of transportation who is a member of a collective bargaining unit

---

[7] *Champion v. Shoreline Sch. Dist.*, 81 Wn.2d 672, 674, 504 P.2d 304 (1972); *accord Monroe v. Soliz*, 132 Wn.2d 414, 425, 939 P.2d 205 (1997) (quoting *King County v. Taxpayers of King County*, 104 Wn.2d 1, 9, 700 P.2d 1143 (1985)); *State v. S.P.*, 110 Wn.2d 886, 890, 756 P.2d 1315 (1988) (quoting *Addleman v. Bd. of Prison Terms & Paroles*, 107 Wn.2d 503, 509, 730 P.2d 1327 (1986)).

[8] Br. of Resp't at 15.

represented by a ferry employee organization." In this case, IBU is not acting as a "ferry employee organization," for it is not "represent[ing] a collective bargaining unit"[9] comprised of "employee[s] of the marine transportation division of the department of transportation."[10] Hence, this argument fails.

¶18 Next, IBU claims that because of the declarations of public policy found in RCW 47.64.005 and RCW 47-.64.006, the entire chapter should be read to confer authority on the MEC. In our view, however, RCW 47.64.005 and RCW 47.64.006 are declarations of public policy rather than operative provisions, neither expands the authority given in the operative provisions, and the operative provisions cannot be read to include what they clearly do not say.

¶19 Next, IBU claims that the MEC has power because of certain cases from the National Labor Relations Board (NLRB). In our view, however, only the Washington Legislature can grant power to the MEC. Assuming without holding that the NLRB can exercise power over WSF and its private concessionaires, it cannot authorize a state agency to do that.

¶20 Next, IBU argues that because WSF has included the disputed language in past RFPs, it must do so now. Again however, we do not perceive how WSF's past practice can affect the Washington Legislature's grant of authority to the MEC.

¶21 Next, IBU claims that WSF's RFP must include the disputed language because it will "vitally affect the terms and conditions of employment" of a different bargaining unit, one made up of ferry deckhands that IBU also happens to represent.[11] Assuming without holding that the deckhands' needs are what IBU says they are, they neither

---

[9] RCW 47.64.011(6).

[10] RCW 47.64.011(5).

[11] Br. of Resp't at 19.

expand nor contract the Washington Legislature's grant of statutory authority to the MEC.

¶22 In conclusion, we hold that the Washington Legislature has not empowered the MEC to entertain an unfair labor practices complaint in the situation present here. We have not considered and do not address whether a different state or federal agency might have such power, or whether WSF, its concessionaires, and the IBU have complied with any laws that might apply to their conduct. Any arguments not discussed are rejected or need not be reached.

¶23 Reversed and remanded to the MEC with directions to dismiss the complaint.

VAN DEREN, A.C.J., and BRIDGEWATER, J., concur.