[No. 34352-5-II.    Division Two.    May 30, 2007.]

BEN DAVIS ET AL., *Respondents*, v. THE DEPARTMENT OF TRANSPORTATION, *Appellant*.

812

*Robert M. McKenna*, Attorney General, *Stewart A. Johnston*, Senior Counsel, and *Kara A. Larsen*, Assistant, for appellant.

*Lewis L. Ellsworth* and *Warren E. Martin* (of *Gordon Thomas Honeywell Malanca Peterson & Daheim, PLLC*), for respondents.

¶1  BRIDGEWATER, J. — The State appeals from a summary judgment order in favor of Washington State Ferries (WSF) employees, in which the trial court agreed that the State willfully deprived the employees of compensation for watch changes that extended beyond their regularly assigned workday. WSF policies require these watch changes, during which the off-going employees exchange any pertinent information about the operation of the vessel before being relieved by on-coming employees.

¶2  We hold that, under the collective bargaining agreement (CBA), watch changes are a work activity for which the State must compensate employees. But we hold that the employees failed to exhaust either their contractual remedies under the CBA or their administrative remedies under the Marine Employees' Commission (MEC). Because the employees' lawsuit was inappropriate, the trial court should have granted summary judgment in favor of the State. Therefore, the employees must seek a remedy either through the procedures established by the CBA or through the procedures established by the MEC. Accordingly, we reverse and remand for entry of a summary judgment in favor of the State.

## FACTS

¶3 The respondents in this case are licensed engineer officers and unlicensed engine room employees for the WSF system. Under a CBA between the Marine Engineers Beneficial Association and the Washington State Department of Transportation (DOT), these employees have negotiated various provisions for overtime compensation.

¶4 For instance, licensed engineer officers and unlicensed engine room employees generally are entitled to overtime compensation at a rate of two times the base rate in their classification.[1] When work is extended 15 minutes or less beyond a regularly assigned workday,[2] the CBA requires the State to compensate the employee for one-quarter hour at the overtime rate. When work is extended 15 minutes or more beyond a regularly assigned workday, the CBA requires the State to compensate the employee in increments of one hour at the overtime rate. Nevertheless, "[s]uch extended work shifts shall not be scheduled on a daily or regular basis." Clerk's Papers (CP) at 72, 107.

¶5 Each regularly assigned work shift aboard a ferry is called a "watch." These watches do not overlap. When one watch ends, another watch immediately begins. WSF policies require that the off-going employees exchange any pertinent information about the operation of the vessel before being relieved. The respondents' expert concluded that, on average, these watch changes lasted about 11 minutes; the State's expert concluded that, on average, these watch changes lasted about 5 minutes.

¶6 Even though watch changes extend the employees' work beyond a regularly assigned work shift, the State does

---

[1] The employees are not always entitled to overtime compensation, though. "Time on duty due to emergency service or delay on account of collision, breakdown, terminal damage, stranding, rendering aid to another vessel, rendering aid to a person, or persons in distress, or life-saving shall not result in overtime pay." Clerk's Papers at 72, 113.

[2] Depending on a vessel's schedule, a regularly assigned workday could be 8 hours or 12½ hours.

not compensate employees for watch changes. In defense of its position, the State notes that: (1) the maritime industry does not consider watch changes compensable work, (2) the CBA is silent about compensation for watch changes, (3) no employee has ever sought overtime compensation for watch changes, and (4) compensation for watch changes has never been the subject of collective bargaining.

¶7 Because of the State's position, the respondents brought a class action lawsuit on behalf of themselves and all other similarly situated employees of the marine transportation division of the DOT. They alleged that the State unlawfully withheld their wages under chapter 49.48 RCW and chapter 49.52 RCW.

¶8 The State moved for summary judgment, arguing that there was no legal basis for the claim and that the employees failed to exhaust their administrative remedies before the MEC. But the trial court denied the State's motion.

¶9 The employees then moved for partial summary judgment, arguing that watch changes are compensable work under chapter 49.48 RCW and/or chapter 49.52 RCW. The trial court agreed with the employees and granted their motion.

¶10 Thereafter, both the State and the employees moved for summary judgment. Again, the State argued in part that: (1) the employees are not entitled to any compensation for watch changes under the CBA; (2) the employees failed to exhaust their administrative remedies before the MEC; and (3) in any case, the State did not willfully deprive the employees of compensation for watch changes. The State also argued that watch changes should not be considered work because they are a de minimis activity. The employees argued that the State willfully deprived them of compensation for watch changes and that they were entitled to twice the amount of wages unlawfully withheld under RCW 49.52.070.

¶11 The trial court denied the State's motion for summary judgment but granted the employees' motion for

summary judgment. The trial court then entered judgment for the employees.

## ANALYSIS

### I. Standard of Review

¶12 On review of an order for summary judgment, we perform the same inquiry as the trial court. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 93 P.3d 108 (2004). Thus, the standard of review is de novo. *Morton v. McFall*, 128 Wn. App. 245, 252, 115 P.3d 1023 (2005). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Pac. W. Mountain Resort*, 119 Wn.2d 484, 502-03, 834 P.2d 6 (1992). Summary judgment is granted only if reasonable persons could reach but one conclusion from all the evidence. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005). "All questions of law are reviewed de novo." *Berger v. Sonneland*, 144 Wn.2d 91, 103, 26 P.3d 257 (2001).

### II. The Right to Compensation for Watch Changes Is Derived From the CBA

¶13 The State claims that "[t]he collective bargaining agreements contain all the terms and conditions of employment and are the exclusive source for wages." Br. of Appellant at 15. And because the CBA is allegedly silent about compensation for watch changes and because the employees did not seek a remedy under the CBA, the State contends that their lawsuit must fail. But we disagree with the State that the CBA is silent about compensation for watch changes.

¶14 In construing a written contract, such as the CBA here, we have consistently applied the following rules:

(1) the intent of the parties controls, (2) we ascertain that intent from reading the contract as a whole, and (3) we do not read ambiguity into the contract. *Dice v. City of Montesano*, 131 Wn. App. 675, 683-84, 128 P.3d 1253, *review denied*, 149 P.3d 377 (2006); *Mayer v. Pierce County Med. Bureau, Inc.*, 80 Wn. App. 416, 420, 909 P.2d 1323 (1995).

¶15 Furthermore, we give words and provisions in a contract their ordinary meaning. *Corbray v. Stevenson*, 98 Wn.2d 410, 415, 656 P.2d 473 (1982). If their meaning is uncertain or if they are capable of more than one meaning, we consider them to be ambiguous. *Shafer v. Bd. of Trs. of Sandy Hook Yacht Club Estates, Inc.*, 76 Wn. App. 267, 275, 883 P.2d 1387 (1994), *review denied*, 127 Wn.2d 1003 (1995). But words and provisions in a contract are not ambiguous simply because a party suggests an opposing meaning. *Mayer*, 80 Wn. App. at 421.

¶16 Here, we hold that the CBA unambiguously addresses compensation for watch changes in its definition of "wages" and its treatment of overtime. As we have noted, the CBA requires: (1) the State to compensate the employees for one-quarter hour at the overtime rate when work is extended 15 minutes or less beyond a regularly assigned workday and (2) the State to compensate the employees in increments of one hour at the overtime rate when work is extended 15 minutes or more beyond a regularly assigned workday. The ordinary meaning of these provisions leaves no room for alternative interpretations. Consequently, the language itself is not ambiguous.

¶17 But the language of these provisions is only one factor in the equation of the parties' intent. *Scott Galvanizing, Inc. v. Nw. EnviroServices, Inc.*, 120 Wn.2d 573, 580, 844 P.2d 428 (1993). In determining the parties' intent, we also look to the contract as a whole, its subject matter and objective, the circumstances of its making, the subsequent acts and conduct of the parties, and the reasonableness of

the parties' interpretations. *Berg v. Hudesman*, 115 Wn.2d 657, 667, 801 P.2d 222 (1990).[3]

¶18 The State contends that no employee has ever sought overtime compensation for watch changes and that the union has never made compensation for watch changes the subject of collective bargaining.[4] Yet, during oral argument, the State candidly acknowledged that even a "layman" certainly would understand that watch changes are a work activity. And regardless of the State's inconsistent positions, the CBA clearly provides compensation for work that is extended beyond a regularly assigned workday.

¶19 The State also contends, "It is undisputed that it is the custom and practice in the maritime industry that watch turnover is not separately compensable." Br. of Appellant at 27. But extrinsic evidence may not be used to add to, modify, or contradict the terms of a contract provision absent evidence of fraud, accident, or mistake. *In re Marriage of Schweitzer*, 132 Wn.2d 318, 327, 937 P.2d 1062 (1997); *Berg*, 115 Wn.2d at 669. Here, in the absence of fraud, accident, or mistake, the State asks us to view the custom and practice of not providing compensation for watch changes as "an expression of the common law of the maritime industry that has become an implied term of the collective bargaining agreements." Br. of Appellant at 27. But, consistent with *Berg*, we refuse to add to, modify, or contradict the unambiguous provisions of the CBA.[5]

---

[3] Under *Berg*, interpretation of a contract provision is a question of law: (1) when the interpretation does not depend on the use of extrinsic evidence or (2) when only one reasonable inference can be drawn from the extrinsic evidence. *Berg*, 115 Wn.2d at 668.

[4] We note that our role is to ascertain the mutual intent of the contracting parties. *Dwelley v. Chesterfield*, 88 Wn.2d 331, 335, 560 P.2d 353 (1977). "Unilateral and subjective beliefs about the impact of a written contract do not represent the intent of the parties." *Olympia Police Guild v. City of Olympia*, 60 Wn. App. 556, 559, 805 P.2d 245 (1991). Moreover, the subsequent conduct of the parties is only one factor that may aid in elucidating the parties' intent. *Berg*, 115 Wn.2d at 668.

[5] We note that the principles of *Berg* readily apply to collective bargaining agreements. *Olympia Police Guild*, 60 Wn. App. at 559-60.

¶20 The State finally contends that watch changes are a de minimis activity, for which the employees should receive no compensation. But we hold that the State's argument is unreasonable and ill-founded. First, the State requires this regular and essential activity. Second, in collectively bargaining with the employees, the State agreed to this compensation practice. Third, we are aware of no state authority that applies a de minimis rule, and the State has shown no compelling reason for us to apply such a rule in light of their compensation practice. In fact, the State's reliance on *Lindow v. United States*, 738 F.2d 1057 (9th Cir. 1984), is misplaced. In *Lindow*, the Ninth Circuit Court of Appeals applied a federal de minimis rule and found that the plaintiffs' claims were de minimis when the activity was (1) irregular and (2) difficult or impractical for the administration to record. *Lindow*, 738 F.2d at 1063-64. In contrast, given the testimony of the State and the employees, watch changes here are (1) regular and (2) not difficult or impractical for the State to monitor and record.

¶21 Here, the only reasonable interpretation of the CBA provision addressing the definition of wages is unambiguous and clear: the State must compensate the employees for watch changes.

### III. RCW 47.64.150 Is Controlling

¶22 Nevertheless, the employees argue that they could not seek a remedy under the CBA in this case because "it would not involve the application or interpretation of any provision of the agreement." Br. of Resp't at 35-36. Consequently, they argue that they were entitled to a statutory remedy under RCW 49.52.050 and RCW 49.52.070.

¶23 First, we disagree with the employees that they could not seek a remedy under the CBA. As explained above, the CBA unambiguously addresses compensation for watch changes in its definition of "wages." Naturally, any effort by the employees to enforce these provisions *would* involve applying the CBA, its grievance procedures, and its remedies.

¶24 Second, we disagree with the employees that they were entitled to a statutory remedy under RCW 49.52.050 and RCW 49.52.070. In part, RCW 49.52.050 states:

> Any employer or officer, vice principal or agent of any employer, whether said employer be in private business or an elected public official, who
>
> . . . .
>
> (2) Wilfully and with intent to deprive the employee of any part of his wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract . . .
>
> . . . .
>
> Shall be guilty of a misdemeanor.

And RCW 49.52.070 provides:

> Any employer and any officer, vice principal or agent of any employer who shall violate any of the provisions of subdivisions (1) and (2) of RCW 49.52.050 shall be liable in a civil action by the aggrieved employee or his assignee to judgment for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees: PROVIDED, HOWEVER, That the benefits of this section shall not be available to any employee who has knowingly submitted to such violations.

¶25 But when the relevant statutory provisions are read together and as a whole, it is clear that the statutory remedy under RCW 49.52.070 does not apply to ferry employees. Instead, we hold that the employees were obligated to pursue their statutory remedies under RCW 47.64.150, which provides:

> An agreement with a ferry employee organization that is the exclusive representative of ferry employees in an appropriate unit may provide procedures for the consideration of ferry employee grievances and of disputes over the interpretation and application of agreements. Negotiated procedures may provide for binding arbitration of ferry employee grievances and of disputes over the interpretation and application of existing agreements. An arbitrator's decision on a grievance

shall not change or amend the terms, conditions, or applications of the collective bargaining agreement. The procedures shall provide for the invoking of arbitration only with the approval of the employee organization. The costs of arbitrators shall be shared equally by the parties.

*Ferry system employees shall follow either the grievance procedures provided in a collective bargaining agreement, or if no such procedures are so provided, shall submit the grievances to the marine employees' commission as provided in RCW 47.64.280.*

(Emphasis added.) And RCW 47.64.280(2)(a) provides that the MEC[6] shall "[a]djust all complaints, grievances, and disputes between labor and management arising out of the operation of the ferry system as provided in RCW 47.64.150."[7]

¶26 By their plain terms, RCW 49.52.070 and RCW 47.64.150 appear to be in conflict. RCW 49.52.070 allows aggrieved employees to seek a remedy through a civil action. But RCW 47.64.150 requires aggrieved ferry employees to seek a remedy either through procedures established by the CBA or through procedures established by the MEC.

¶27 "In construing conflicting statutory language, 'the primary objective of the court is to ascertain and carry out the intent and purpose of the legislature in creating it.'" *Gorman v. Garlock, Inc.*, 155 Wn.2d 198, 210, 118 P.3d 311 (2005) (quoting *Fraternal Order of Eagles, Tenino Aerie No.*

---

[6] The MEC is an administrative agency created by the Washington legislature and has only such power as the legislature chooses to grant. *Dep't of Transp. v. Inlandboatmen's Union of Pac.*, 130 Wn. App. 472, 475, 123 P.3d 137 (2005), *review denied*, 157 Wn.2d 1020 (2006). Chapter 47.64 RCW clearly shows that "the Washington Legislature has authorized the MEC to intercede in labor negotiations between WSF on the one hand and, on the other hand, ferry employees and a ferry employee organization." *Inlandboatmen's Union*, 130 Wn. App. at 479. In addition, the Administrative Procedure Act, chapter 34.05 RCW, applies to decisions of the MEC as a state agency authorized to adjudicate disputes. *Dep't of Transp. v. Inlandboatmen's Union of Pac.*, 103 Wn. App. 573, 579, 13 P.3d 663 (2000).

[7] Chapter 47.64 RCW does not define complaint, grievance, or dispute. *See* RCW 47.64.011.

*564 v. Grand Aerie of Fraternal Order of Eagles*, 148 Wn.2d 224, 239, 59 P.3d 655 (2002), *cert. denied*, 538 U.S. 1057 (2003)). Thus, we give effect to each of the statutes, while generally giving preference to the more specific and more recently enacted statute. *Tunstall v. Bergeson*, 141 Wn.2d 201, 211, 5 P.3d 691 (2000), *cert. denied*, 532 U.S. 920 (2001).

¶28 Here, we give preference to the more recent and far more specific language of RCW 47.64.150. After all, the policy of the legislature in originally enacting RCW 49-.52.050 and RCW 49.52.070 in 1939 was to prevent employers from coercing employees into making secret rebates from their wages. *McDonald v. Wockner*, 44 Wn.2d 261, 269-71, 267 P.2d 97 (1954); *see* LAWS OF 1939, ch. 195, §§ 1-5.[8] But the policy of the legislature in enacting RCW 47.64.150 in 1983 included the desire to

> promote harmonious and cooperative relationships between the ferry system and its employees by permitting ferry employees to organize and bargain collectively; . . . prohibit and prevent all strikes or work stoppages by ferry employees; . . . protect the rights of ferry employees with respect to employee organizations; and . . . promote just and fair compensation, benefits, and working conditions for ferry system employees.

RCW 47.64.006; *see* LAWS OF 1983, ch. 15, §§ 1-33. And the legislature created the MEC to achieve these ends. RCW 47.64.280(1); *Dep't of Transp. v. Inlandboatmen's Union of Pac.*, 103 Wn. App. 573, 578, 13 P.3d 663 (2000). Moreover, if we were to allow the employees to seek a remedy under RCW 49.52.070, we would render RCW 47.64.150 and the rest of chapter 47.64 RCW "meaningless or superfluous." *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996). We cannot condone such a result.

---

[8] We note, however, that the application of RCW 49.52.050 and RCW 49.52.070 has changed over the years to include claims against employers for unlawfully held wages, regardless of whether the claim involved secret rebates of wages or false records. *See Wingert v. Yellow Freight Sys., Inc.*, 146 Wn.2d 841, 50 P.3d 256 (2002); *Seattle Prof'l Eng'g Employees Ass'n v. Boeing Co.*, 139 Wn.2d 824, 991 P.2d 1126, 1 P.3d 578 (2000).

*See Gorman*, 155 Wn.2d at 211. Instead, consistent with the aforementioned principles of statutory construction, we hold that the employees were obligated to pursue their statutory remedies under RCW 47.64.150.

IV. Exhaustion of Grievance and Arbitration Procedures

¶29 According to the plain language of RCW 47.64.150, ferry employees must pursue a grievance through the procedures established by the CBA unless "no such procedures are so provided." RCW 47.64.150; *Hill v. Dep't of Transp.*, 76 Wn. App. 631, 645, 887 P.2d 476, *review denied*, 126 Wn.2d 1023 (1995).

¶30 Here, the CBA provided grievance procedures to the employees. In the event of a controversy or dispute arising from applying or interpreting the CBA, licensed engineer officers are to "present the grievance or dispute in writing to the other party as soon as possible" for resolution of the matter. CP at 91. In the event the parties fail to agree on a resolution, either party can submit the matter to arbitration before the MEC or an independent third party for a final resolution. In any case, the arbitrator's decision is final and binding.

¶31 And in the event of a dispute involving the interpretation, application, or alleged violation of the CBA, unlicensed engineer officers are to use the exclusive CBA grievance procedures. In fact, "no other remedies may be utilized by any person . . . until the grievance procedures herein have been exhausted." CP at 110. The initial grievance procedures include informal resolution and formal resolution of the grievance. But if the matter has not been satisfactorily resolved, the Union may submit the matter to arbitration before the MEC or an independent third party for a final resolution. In any case, the arbitrator's decision is final and binding.

¶32 Even assuming, arguendo, that the employees' claim was not a grievance for purposes of the CBA, and that the employees therefore had no grievance procedures available through the CBA, the employees nevertheless were obli-

gated to pursue a remedy from the MEC according to RCW 47.64.150 before seeking a remedy at law. *See Hill*, 76 Wn. App. at 645. Here, without question, the employees had a complaint, grievance, or dispute that arose "out of the operation of the ferry system." RCW 47.64.280(2). And the MEC would have the authority to address the employees' dissatisfaction with watch changes and overtime pay.[9]

## V. Conclusion

¶33 It is undisputed that the employees in this case failed to seek a remedy either through the procedures established by the CBA or through the procedures established by the MEC. We agree with the State that the employees, by resorting to the court system, have "short-circuit[ed]" RCW 47.64.150. Br. of Appellant at 29. Having failed to exhaust either their contractual remedies or their administrative remedies, we hold that the employees are precluded from bringing this action. *See S. Hollywood Hills Citizens Ass'n for Pres. of Neighborhood Safety & Env't v. King County*, 101 Wn.2d 68, 73, 677 P.2d 114 (1984); *Smith v. Gen. Elec. Co.*, 63 Wn.2d 624, 625-27, 388 P.2d 550 (1964); *Moran v. Stowell*, 45 Wn. App. 70, 75, 724 P.2d 396, *review denied*, 107 Wn.2d 1014 (1986); *Garton v. N. Pac. Ry.*, 11 Wn. App. 486, 489, 523 P.2d 964 (1974).

¶34 And we hold that the trial court erred in granting summary judgment to the employees. Nevertheless, we emphasize that watch changes are a regular, essential, and required work activity for which the State must compensate under the CBA. And whether watch changes are work or whether watch changes must be compensated is not an

---

[9] And before seeking a remedy through the court system, the employees would have to exhaust all rights of administrative appeal. *See S. Hollywood Hills Citizens Ass'n for Pres. of Neighborhood Safety & Env't v. King County*, 101 Wn.2d 68, 73, 677 P.2d 114 (1984). After all, claims under RCW 47.64.150 and RCW 47.64.280(2) are originally cognizable by the MEC, which has established mechanisms for resolving complaints by aggrieved parties and administrative remedies to provide the relief sought. *See* Title 316 WAC.

issue for future grievance or arbitration. We also emphasize that our holding in this case is limited to ferry employees as defined in RCW 47.64.011(5).[10] And because of this holding, we do not address any other statutory remedies apart from RCW 47.64.150.[11]

## VI. Attorney Fees

¶35 Because the employees at this time have not recovered any wages owed, we do not award attorney fees under either RCW 49.48.030 or RAP 18.1.

¶36 Reversed and remanded to enter judgment on behalf of the State of Washington, Department of Transportation.

QUINN-BRINTNALL and PENOYAR, JJ., concur.

Motions for reconsideration denied July 2, 2007.

Review denied at 163 Wn.2d 1019 (2008).

---

[10] Because our decision rests exclusively on RCW 47.64.150, and the State is not an employer under the Labor-Management Relations Act, 29 U.S.C. § 185, we do not reach the issue of whether the employees' claims are subject to federal preemption under section 301 of the Labor-Management Relations Act. *See* 29 U.S.C. §152(2); *Livadas v. Bradshaw*, 512 U.S. 107, 121-22, 114 S. Ct. 2068, 129 L. Ed. 2d 93 (1994); *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 219, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985); *see also Commodore v. Univ. Mech. Contractors, Inc.*, 120 Wn.2d 120, 129, 839 P.2d 314 (1992); *United Food & Commercial Workers Union Local 1001 v. Mut. Benefit Life Ins. Co.*, 84 Wn. App. 47, 51, 925 P.2d 212, *review denied*, 133 Wn.2d 1021 (1997); *Ervin v. Columbia Distrib., Inc.*, 84 Wn. App. 882, 888-89, 930 P.2d 947 (1997).

[11] But we note that chapter 49.46 RCW, the Minimum Wage Act (MWA), does not apply to the employees. The MWA specifically exempts vessel operating crews of the ferry system. RCW 49.46.010(5)(m). And we disagree with the State's contention that chapter 47.64 RCW conflicts with chapter 49.12 RCW, the Industrial Welfare Act (IWA). Except for its conclusory statements, the State has not explained how chapter 47.64 RCW conflicts with chapter 49.12 RCW, chapter 43.22 RCW, or chapter 296-126 WAC. In fact, we note that the IWA operates as a floor for labor standards, above which parties may contract through collective bargaining agreements for terms that enhance or exceed those minimum standards. *Wingert*, 146 Wn.2d at 852 (quoting *Wingert v. Yellow Freight Sys., Inc.*, 104 Wn. App. 583, 596, 13 P.3d 677 (2000)).