# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| IN RE MARRIAGE OF | ) | |
| | ) | |
| KELLY GRACE, | ) | No. 70164-9-I (Consolidated w/ |
| | ) | No. 70460-5-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| PETER SPOUSE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 2, 2014 |

2014 JUN -2 AM 10: 58 COURT OF APPEALS DIV I STATE OF WASHINGTON

SPEARMAN, C.J. — Clear and unambiguous terms in a property settlement agreement must be enforced as written. Here, the parties' property settlement agreement, incorporated into the decree of dissolution, awards Peter Spouse full ownership of the parties' co-founded business and requires him to pay all outstanding taxes and liabilities associated with that asset. Therefore, the trial court did not err in determining that Spouse was solely responsible for taxes associated with corporate earnings for 2011, the year the parties dissolved their marriage, except for that portion of corporate profit that Spouse's wife received in cash distributions. In addition to granting appropriate tax relief to Spouse's wife, the trial court also awarded her attorney fees and $2,500 for professional accountant's fees. But since the parties' contractual agreement encompasses only court costs and reasonable attorney fees, we reverse the award as to the fees awarded for professional services. We affirm in all other respects.

FACTS

Peter Spouse and Kelly Grace married in 2000 and dissolved their marriage in 2011. Spouse and Grace resolved the issues related to property distribution through a property settlement agreement (PSA) which is incorporated into the decree of dissolution. The parties' primary asset was a business, TelcoPrime, which they jointly founded and co-owned. TelcoPrime is organized as a subchapter S Corporation for federal taxation purposes. See 26 U.S.C. § 1361. As such, TelcoPrime's profits or losses are allocated to its owners on a K-1 tax form, reported on the owners' personal tax returns, and taxes are calculated and paid at personal income tax levels. See 26 U.S.C. § 1366(a).

The PSA awards the business to Spouse. In exchange, the parties agreed that Grace would receive a transfer payment of over a million dollars to be paid in installments over a seven-year period. In addition, the agreement awards several "company assets" to Grace, including three vehicles and 50 percent of the "dividends and distributions from the business" until the September 30, 2011 date of dissolution. Clerk's Papers (CP) at 29.

In early 2012, Grace received from TelcoPrime a 2011 K-1 form that allocated business income of $350,479 to her. Grace quickly recognized that the form allocated corporate income to her beyond the amount she had received in cash distributions between January and September 2011. She retained an accountant to assess the accuracy of the K-1 form and to determine whether she received her full 50 percent share of the 2011 distributions. For this purpose, she requested TelcoPrime's accounting records.

2

Spouse's attorney refused to provide the records unless Grace executed a non-disclosure agreement restricting her ability to use the information in a subsequent motion to enforce the PSA. After the parties were unable to negotiate a mutually acceptable agreement, Grace filed a motion to allow discovery. The court entered an order allowing the discovery.

After obtaining and examining TelcoPrime's accounting records, Grace filed a motion to enforce the terms of the PSA. In her motion, Grace sought tax relief and claimed entitlement to additional distributions of TelcoPrime's 2011 earnings. She argued that because Spouse was awarded the business, under the PSA he was responsible to pay the taxes resulting from all profit and earnings generated by the business in 2011, regardless of whether that profit was retained by the business or distributed to either party. Grace argued that under the agreement, she was required to pay taxes only on the salary she received from TelcoPrime in 2011.

After a family court commissioner denied Grace's motion, she filed a motion to revise the commissioner's decision. Following oral argument, the court entered an order on revision granting, in part, Grace's motion to enforce the PSA. The court ruled that Grace was responsible to pay the taxes on $171,386 of TelcoPrime profit she received as cash distributions between January 1 and September 30, 2011, because these distributions were a business asset awarded to her according to the agreement. However, the court determined it was Spouse's responsibility to pay the taxes on approximately $179,000 of corporate income allocated to Grace on the K-1 form—the difference between $350,479 and $171,386. Therefore, the court ordered Spouse to reimburse Grace for the excess taxes she incurred.

3

Grace also requested attorney fees based on a provision in the PSA. The court granted the request, recognizing that Grace prevailed to a significant extent. The court also pointed out that the conduct of Spouse and his counsel unnecessarily increased the cost of resolving the tax issue:

> The steps they took to have to get here [sic] were totally inappropriate and totally excessive. It did appear to me that it was an attempt to interfere with [Grace's] ability to get information to really address this issue.

Verbatim Report of Proceedings (VRP) (1/11/2013) at 38.

The court entered judgment on the reimbursement amount of $69,989. In a separate order, the court awarded approximately $23,000 in attorney fees and $2,500 in costs to Grace. Spouse appeals.

### Interpretation of the PSA

Spouse contends that the trial court erred by interpreting the PSA to require him to pay taxes on income allocated to Grace, as co-owner of TelcoPrime for 9 months of 2001, on the K-1 form. He claims that by doing so, the court essentially added terms to the contract because the PSA does not specifically mention this obligation or list Grace's taxes as a debt assumed by him.

In an appeal from a decision granting or denying a motion to revise a commissioner's ruling, we review the decision on revision, not the commissioner's ruling. Boeing Emps. Credit Union v. Burns, 167 Wn. App. 265, 270, 272 P.3d 908, rev. denied, 175 Wn.2d 1008 (2012). The interpretation of the language of a property settlement agreement is a question of law that we review de novo. In re Marriage of Gimlett, 95 Wn.2d 699, 705, 629 P.2d 450 (1981). Clear and unambiguous terms of an agreement are enforced as written. Grey v. Leach, 158 Wn. App. 837, 850, 244 P.3d

970 (2010). "Interpretation by the reviewing court must be based upon the intent of the parties as reflected in the language of the agreement." Byrne v. Ackerlund, 108 Wn.2d 445, 455, 739 P.2d 1138 (1987). We look for the objective manifestations of the meeting of the minds; the parties' subjective intent is irrelevant. Olympia Police Guild v. City of Olympia, 60 Wn. App. 556, 559, 805 P.2d 245 (1991). We give words used in an agreement their ordinary, usual, and popular meaning unless the agreement clearly demonstrates a contrary intent, and we do not read ambiguity into an agreement where it can reasonably be avoided. Grey, 158 Wn. App. at 850.

This issue is resolved by specific provisions of the PSA. Paragraph 7.5 addresses taxes. With respect to income taxes for the year 2011, the agreement states:

> The parties shall file separate income tax returns for calendar year 2011 and each party shall be responsible for any and all taxes due on his or her own earned income and income or deductions generated by assets awarded to him or her by this Agreement.

CP at 31-32. Paragraph 7.7 entitled, Obligations and Taxes Incident to Assets, is also instructive and consistent with paragraph 7.5. CP at 32. Paragraph 7.7 provides:

> Unless otherwise specifically provided herein, each party shall assume and pay any and all outstanding obligations relating to property received by him or her hereunder, and shall hold the other harmless therefrom and indemnify the other therefore. This shall include taxes, penalties and interest incident to any asset awarded to each party.

CP at 32.

Spouse contends that the PSA obligates him to pay all taxes on TelcoPrime's corporate earnings only with respect to those earnings generated after the September 2011 dissolution, when he assumed sole ownership. However, the PSA's provisions are

5

clear and to the contrary. For the 2011 tax year, the PSA requires that each party pays taxes on his or her own earned income and pays taxes in connection with those assets awarded to him or her in the agreement. The business was awarded to Spouse. He is therefore required to pay taxes associated with the company's 2011 profits. The only exception is the portion of 2011 TelcoPrime profit that was distributed to Grace as an asset in accordance with the agreement.

Spouse relies on the fact that Exhibit C of the PSA allocating debt to him does not mention taxes associated with TelcoPrime income allocated to Grace. Exhibit C states that Spouse assumes "[a]ny and all debts associated with any asset he receives" in the PSA. At the time of the September 2011 agreement, the 2011 taxes generated by TelcoPrime's 2011 profit were not yet a debt owed. TelcoPrime did not issue the K-1 triggering Grace's responsibility to report corporate earnings on her 2011 tax form until early 2012. The failure to refer to the K-1 form or provide a specific mechanism for reimbursement does not make the provisions of the PSA either ambiguous or invalid.

Spouse adopts two contradictory positions to argue that the trial court's interpretation is erroneous. On the one hand, he claims that the court reached its conclusion only by improperly considering extrinsic evidence of Grace's subjective intent that she would be reimbursed for any taxes due on TelcoPrime's 2011 earnings. On the other hand, he argues that the court's interpretation is flawed because it is inconsistent with the parties' mutual intent to achieve an equal division of assets.[1]

Although we may consider the context surrounding an instrument's execution to interpret the parties' intent in certain circumstances, we use extrinsic evidence only to illuminate the meaning of specific language used, and not to uncover an independent

---

[1] We note that below, Spouse denied any mutual intention to equally divide the assets.

intention or to vary, contradict, or modify the language of the instrument. Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005); Go2Net, Inc. v. C I Host, Inc., 115 Wn. App. 73, 84, 60 P.3d 1245 (2003) (evidence of a party's unilateral or subjective intent as to contract's meaning is inadmissible extrinsic evidence). Spouse's argument here advocates the use of extrinsic evidence of intent to modify and qualify the written terms, not to elucidate the meaning of those terms. And where, as here, the terms of the contract can be determined from the actual words used, the subjective intent of the parties is generally irrelevant. Hearst, 154 Wn.2d at 504. Because the provisions of the contract with respect to liability for 2011 taxes generated by TelcoPrime's earnings are unambiguous, there was no need to resort to extrinsic evidence to ascertain the intent behind the provisions, nor was there any need for an evidentiary hearing on the issue of intent.

## Attorney Fees

Spouse challenges the award of attorney fees to Grace because she did not prevail on all issues raised in her motion to enforce the PSA. Spouse argues that the court should have denied Grace's motion in its entirety because she was not the "prevailing party." Spouse claims that he actually prevailed because he successfully defended against several claims. The question of whether a trial court is authorized to award attorney fees is a question of law, which we review de novo. Gander v. Yeager, 167 Wn. App. 638, 646, 282 P.3d 1100 (2012). When attorney fees are authorized, we review an attorney fee award for an abuse of discretion. Gander, 167 Wn. App. at 647.

The court awarded fees under the PSA which states that "[a]ny party failing to timely carry out the terms of this Agreement shall be responsible for any court costs and

7

reasonable attorney's fees of the other party incurred as a result of such failure. CP at 34. Spouse cites RCW 4.84.330, but this statute is inapplicable because the contractual attorney fee provision in the PSA is bilateral. See Hawk v. Brandjes, 97 Wn. App. 776, 780, 986 P.2d 841 (1999); accord Walji v. Candyco, Inc., 57 Wn. App. 284, 288, 787 P.2d 946 (1990) (statutory "prevailing party" provision of RCW 4.84.330 does not control over the plain language of a contract that contains a bilateral attorney fee clause). Under the specific language of the contractual provision at issue, Grace was entitled to reasonable attorney fees if she incurred fees as a result of Spouse's failure to "timely carry out the terms of the Agreement." According to the trial court's decision, Spouse failed to carry out the terms of the agreement by refusing to pay taxes associated with TelcoPrime's earnings. The trial court did not likewise find that Grace failed to carry out any terms of the PSA. Spouse's argument fails to address the specific language of the agreement.

Alternatively, Spouse argues that Grace was entitled only to fees associated with her successful claims. He contends, for instance, that it was unnecessary for Grace to access TelcoPrime's accounting records or negotiate a non-disclosure agreement in order to seek reimbursement under the PSA and that fees related to these matters should have been excluded. However, the trial court disagreed with this position, noting that Grace reasonably sought to access accounting information to enable her to determine her tax liability and the accuracy of the K-1 form. The fees incurred in obtaining financial information were related to Grace's claim for reimbursement under the PSA. C.f. Mayer v. City of Seattle, 102 Wn. App. 66, 79-80, 10 P.3d 408 (2000)

(abuse of discretion for court to award fees for time spent on discovery that was not relevant to plaintiff's Model Toxics Control Act claim which provided attorney fees).

Finally, Spouse asserts that the court failed to adequately state the basis for fees or the method used to calculate fees. But the fee request was based on the PSA and the record is sufficient to demonstrate the manner of calculation. Grace provided detailed documentation of the fees she incurred. The record before the trial court shows that the court considered the number and reasonableness of the hours expended, the tasks performed, and the billing rates of the legal service providers. The court awarded approximately 85 percent of the fees requested, in recognition that Grace was not successful on all her claims. Spouse fails to identify, here or below, specific billing items that were unrelated to the issue of tax liability and required segregation. Thus, there is no basis to conclude that the trial court erred in awarding fees or failed to properly exercise its discretion in calculating the amount of fees.

<u>Fees for Professional Services</u>

Spouse argues that the trial court improperly awarded professional fees to Grace as costs. In addition to attorney fees, Grace requested $5,100 for accountant fees. The trial court awarded approximately half of that amount, $2,500. Grace correctly points out that the statutory definition of costs under RCW 4.84.010 is not determinative because the court awarded fees and costs under the PSA, not the statute. Nevertheless, the PSA allows for recovery of only "court costs" and "reasonable attorney fees." Grace maintains that the accountant's "expertise was essential to the development of [her] case," and that it would be inequitable for her to bear the cost of that expense. Resp. Br at 20. She does not, however, identify the legal basis for the award of such fees.

9

Because the court lacked a contractual or other legal basis to award Grace fees for professional accounting services, we reverse that aspect of the court's March 27, 2013 order awarding fees and costs.

<u>Attorney Fees on Appeal</u>

Grace seeks attorney fees and costs on appeal. We may award attorney fees under RAP 18.1(a) if applicable law grants the right to recover attorney fees and the party requests the fees as prescribed by RAP 18.1. <u>Wachovia SBA Lending, Inc. v. Kraft</u>, 165 Wn.2d 481, 493, 200 P.3d 683 (2009). A contract that provides for the payment of attorney fees includes fees necessary for both trial and appeal. <u>Boyd v. Davis</u>, 127 Wn.2d 256, 264, 897 P.2d 1239 (1995). Upon compliance with RAP 18.1, Grace is entitled to an award of reasonable attorney fees and costs on appeal.

Spearman, C.J.

WE CONCUR:

Cox, J.